UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
:
MANCHESTER INC., NICE CARS FUNDING, LLC,    :    **ECF CASE**
NICE CARS ACCEPTANCE ACQUISITIONCO, INC.    :
AND NICE CARS OPERATIONS                    :
ACQUISITIONCO, INC.,                        :
                                            :    07 Civ. 8659 (LTS)
                                            :
                     Plaintiffs,            :
                                            :
          v.                                :
                                            :
RAY LYLE, VICTORIA LYLE, GINGER BOND,       :
RAY LYLE II, ROBERT LYLE, AND               :
LEEDOM & ASSOCIATES, LLC,                   :
                                            :
                     Defendants.            :
                                            :
-----------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT LEEDOM & ASSOCIATES, LLC'S
## MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

          **KING & SPALDING LLP**
          Richard T. Marooney (RM-0276)
          Mordecai Geisler (MG-9203)
          1185 Avenue of the Americas
          New York, New York 10036-4003
          Telephone: (212) 556-2100
          Fax:        (212) 556-2222

OF COUNSEL:
TANNER & GUIN, LLC
Junius F. Guin
Justin G. Williams
Thomas W. Scroggins
Capitol Park Center
2711 University Boulevard
Tuscaloosa, Alabama 35401
Telephone: (205) 633-0200
Fax:        (205) 633-0290

          *Counsel for Leedom & Associates, LLC*

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................................. 1

FACTUAL ALLEGATIONS REGARDING LEEDOM .............................................................. 3

ARGUMENT .................................................................................................................................. 5

POINT I  PLAINTIFFS' FIRST CLAIM FOR SECURITIES FRAUD SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM .................................................. 5

    A.    Plaintiffs Fail to Plead Adequately a Claim Under Section 10(b) of the Exchange Act and Rule 10b-5 ............................................................................... 6

        1. Plaintiffs Fail To Allege Particular Facts Concerning the Alleged Misstatements Made by Leedom ..................................................................... 6

        2. Plaintiffs Fail To Allege Particular Facts Showing a Strong Inference of Scienter ......................................................................................................... 8

        3. Plaintiffs Fail To Allege Particular Facts Showing Reliance and a Duty to Disclose ...................................................................................................... 11

    B.    Plaintiffs Fail to Plead Adequately a Claim Under Section 20(a) of the Exchange Act ............................................................................................................ 12

POINT II  PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION .................................................. 13

POINT III  PLAINTIFFS' SECOND CLAIM FOR COMMON LAW FRAUD SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM .................................... 13

POINT IV  PLAINTIFFS' THIRD CLAIM FOR RESCISSION SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM .................................................. 14

POINT V  PLAINTIFFS' EIGHTH CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM ....... 15

CONCLUSION ............................................................................................................................. 17

Defendant Leedom & Associates, LLC ("Leedom")[1] respectfully submits this Memorandum of Law in Support of its Motion to Dismiss the Second Amended Complaint (the "Complaint" or "Sec. Am. Compl.") in its entirety, as against itself, pursuant to Rules 8, 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b)(1) and (2) (the "PSLRA").

## PRELIMINARY STATEMENT

The sum total of Leedom's connection to this case is that it arranged and serviced loans made to the Nice Cars Companies before the sale of the Nice Cars Companies to Manchester. Leedom was not a party to, or a beneficiary of, the transaction at issue between plaintiffs and the Lyle Defendants. At most, Leedom was a peripheral figure in the events surrounding this case. Leedom was <u>not</u> <u>even</u> <u>mentioned</u> <u>once</u> in plaintiffs' 34-page First Amended Complaint, filed a mere six weeks before this current version. Plaintiffs are attempting to drag Leedom into this case because, as plaintiffs admit, the "combined resources of all the Lyle Defendants are not sufficient" to pay the alleged damages. Sec. Am. Compl. ¶ 73.

Plaintiffs assert four claims against Leedom – the First, Second, Third and Eighth Claims – each of which should be dismissed for failure to state a claim. Plaintiffs' First Claim is actually two separate claims under sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t, and Rule 10b-5, 17 C.F.R. § 240.10b-5. The section 10(b) and Rule 10b-5 claim should be dismissed for at least three reasons. First, plaintiffs do not and cannot plead facts with the specificity required under the heightened pleading standards of the PSLRA and Rule 9(b) of the Federal Rules of Civil Procedure. Plaintiffs do not allege any single document or specific statement, the name of any individual, a particular time or place when a statement was made nor any other identifying fact regarding any

---

[1] The proper defendant in this case is actually Leedom Financial Services, LLC.

misstatement that Leedom supposedly made. They do not and cannot allege the who, what, when, where and how to satisfy the PSLRA's heightened pleading standards. Rather, plaintiffs lump Leedom together with the four other Lyle Defendants and allege repeatedly that "Leedom and the Lyle Defendants" provided vague, unspecified "data" and "information" that was misleading. Second, plaintiffs do not plead facts giving rise to a "strong inference" of scienter, and the only alleged "motive" plaintiffs attempt to attribute to Leedom is that Leedom acted to protect its own business interests and reputation -- a motive that all corporations share and which courts repeatedly hold is insufficient for purposes of pleading securities fraud. Third, plaintiffs do not allege any facts demonstrating that plaintiffs should have reasonably relied upon Leedom or that Leedom owed plaintiffs a duty to disclose. The Supreme Court's recent holding in Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc. supports dismissal of plaintiffs' section 10(b) and Rule 10b-5 claim alleged here.

Plaintiffs' "control person" claim under section 20(a) should be dismissed for the following reasons: plaintiffs (i) plead no facts alleging that Leedom had any control over the Lyle Defendants, and (ii) fail to plead facts showing that Leedom was a "culpable participant" in any securities law violation.

Plaintiffs base jurisdiction for the Complaint on the federal securities questions raised in the First Claim. Because the federal securities claims fail and should be dismissed as against Leedom, plaintiffs' state law claims in their Second, Third and Eighth Claims should dismissed as against Leedom for lack of subject matter jurisdiction.

If the Court retains jurisdiction, the state law claims fail on the merits. Plaintiffs' Second Claim for common law fraud fails to state a claim for the same reasons that their section 10(b) and Rule 10b-5 claim fails. Plaintiffs' Third Claim for rescission is nonsensical because Leedom

was not a party to any agreement with plaintiffs and was not a party to the transaction at issue. In any event, there are no sufficient allegations of fraud as to Leedom that could give rise to any claim of rescission. Finally, plaintiffs' Eighth Claim for tortious interference against Leedom should be dismissed because plaintiffs allege no facts that support such a claim. Plaintiffs offer only sweeping, generalized unsupported legal conclusions, which do not state a claim for tortious interference under settled law. Moreover, plaintiffs have not alleged any damages they have suffered from the supposed conspiracy between the Lyle Defendants and Leedom, a conspiracy which, as plaintiffs acknowledge, has not resulted in any business venture actually competing with plaintiffs.

## FACTUAL ALLEGATIONS REGARDING LEEDOM

Most of the Second Amended Complaint has nothing to do with Leedom. At the heart of the Complaint are the October 2006 stock purchase agreements (the "Agreements") between Manchester and two of the Lyle Defendants to sell all of the shares of the Nice Cars Companies to Manchester, allowing Manchester to acquire the Lyles' business of financing and selling used cars to buyers with sub-prime credit in a market segment known as Buy Here-Pay Here (the "BHPH Market"). Sec. Am. Compl. ¶ 1. Plaintiffs do not allege that Leedom was a party to or a beneficiary of the Agreements – in fact, Leedom was not. Leedom was merely the Nice Cars Companies' loan servicer that administered their line of credit. Sec. Am. Compl. ¶¶ 18, 33. Leedom itself did not loan money to the Nice Cars Companies – rather, the actual funding was provided by certain credit unions. Id.

The "misstatements" purportedly made by Leedom are alleged in paragraphs 20, 21, 22 and 35. In paragraph 20, plaintiffs allege "the Lyle Defendants and Leedom provided to Manchester, its attorneys, consultants and other representatives, and its lender (the "Lender"), substantial documentary and oral information, all of which was represented to be true and

3

accurate, showing the current and historical business, operations and financial condition of the Nice Cars Companies." Sec. Am. Compl. ¶ 20. In paragraph 21, plaintiffs allege that "the Lyle Defendants and Leedom provided Plaintiffs with information, including the Nice Cars Companies' audited financial statements" purportedly containing erroneous information concerning profit, revenue growth, current receivables and reserve allowances. Sec. Am. Compl. ¶ 21.

In paragraph 22, plaintiffs allege that "[p]re-acquisition data provided to Manchester by the Lyle Defendants and Leedom purported to show dramatic annual increases in the size of the Nice Cars Companies' consumer loan portfolio . . ." Sec. Am. Compl. ¶ 22. Plaintiffs also allege that "[t]he Lyle Defendants and Leedom also provided information purporting to show that historical losses on the loan portfolio generally were less than 20%, and in no event fluctuated to more than 30% of the loans originated." Id.

In paragraph 35, plaintiffs allege that Leedom "periodically provided Plaintiffs with purportedly independent data to demonstrate the then current performance of the Nice Cars Companies' loan portfolio." Sec. Am. Compl. ¶ 35. Plaintiffs also allege that "[i]nstead of providing information showing Leedom's own knowledge that the performance of the Pledged Notes was deteriorating, Leedom provided Plaintiffs with data that was skewed to substantiate the misleading data being provided to Plaintiffs by the Lyle Defendants." Id. Plaintiffs' lack of specificity in paragraphs 20 through 22 and 35 is obvious.

Plaintiffs' purported "scienter" allegations related to Leedom are set forth in paragraphs 33 through 35. In paragraph 33, plaintiffs allege that "it was in Leedom's interest to assist in selling the Nice Cars Companies as soon as possible – before the Credit Line became under-collateralized and in jeopardy of not being fully repaid." Sec. Am. Compl. ¶ 33.

4

In paragraph 34, plaintiffs allege that Leedom wanted the sale of the Nice Car Companies stock to occur "quickly" in light of a potential "forced liquidation" relating to IRS claims against the Shareholders. Sec. Am. Compl. ¶ 34. A forced liquidation of the Nice Cars Companies to pay off the IRS allegedly would increase the risk that the credit line extended to the Nice Cars Companies would not be repaid in full, exposing Leedom to "substantial losses on its loans," liability to one of the credit unions financing the Nice Cars Companies, and "serious damage" to Leedom's business reputation. Id. In paragraph 35, plaintiffs allege that Leedom "knew that the data it was providing to Plaintiffs was false and misleading." Sec. Am. Compl. ¶ 35.

The "tortious interference" allegations are set forth in paragraphs 59 and 60. Each allegation is wholly conclusory and unsupported by any facts. In paragraph 59, plaintiffs allege "[t]he Lyle Defendants and Leedom, acting in concert, are in the process of opening one or more BHPH used car dealerships, directly and indirectly, in Georgia and Alabama." Sec. Am. Compl. ¶ 59. In paragraph 60, plaintiffs allege that "Leedom is assisting the Lyle Defendants in their unlawful efforts by providing them financing with the knowledge that the Lyle Defendants are violating their contractual obligations to plaintiffs." Sec. Am. Compl. ¶ 60.

Other paragraphs that mention Leedom consist only of sweeping, generalized legal conclusions. See Sec. Am. Compl. ¶¶ 2, 3, 28, 32, 36, 40, 57, 75-77, 81-83, 87, 113, 114. No facts support these allegations, which do not give rise to any cause of action.

## ARGUMENT

### POINT I

### PLAINTIFFS' FIRST CLAIM FOR SECURITIES FRAUD SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

Plaintiffs claim that Leedom violated section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, as well as section 20(a) of the Exchange Act. The section 10(b) and

Rule 10b-5 claim should be dismissed because (i) plaintiffs fail to plead fraud with any particularity as required by Rule 9(b) and the PSLRA, (ii) plaintiffs fail to plead facts showing a "strong inference" of scienter, and (iii) plaintiffs fail to plead that it was reasonable for plaintiffs to rely on any information allegedly provided to them by Leedom or that Leedom owed plaintiffs a duty to disclose. The section 20(a) control person claim fails because plaintiffs (i) fail to plead facts showing Leedom had any control over the Lyle Defendants or the transaction at issue, and (ii) fail to plead facts showing Leedom was a "culpable participant" in any wrongdoing.

### A. Plaintiffs Fail to Plead Adequately a Claim Under Section 10(b) of the Exchange Act and Rule 10b-5

To state a claim for securities fraud under section 10(b) of the Exchange Act and Rule 10b-5, plaintiffs must allege that Leedom (1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury. Lentell v. Merrill Lynch & Co., Inc., 396 F.3d 161, 172 (2d Cir. 2005). Allegations under section 10(b) and Rule 10b-5 "are subject to the heightened pleading requirements" of Rule 9(b) of the Federal Rules of Civil Procedure and the PSLRA. Fed. R. Civ. P. 9(b); 15 U.S.C. § 78u-4(b) (2007); Xerion Partners I LLC v. Resurgence Asset Mgmt., LLC, 474 F. Supp. 2d 505, 516 (S.D.N.Y. 2007). Plaintiffs' section 10(b) and Rule 10b-5 claim fails for at least three reasons: (i) plaintiffs fail to allege fraud with the requisite particularity, (ii) plaintiffs fail to plead scienter, and (iii) plaintiffs fail to allege that Leedom was a party that had a duty to disclose upon which plaintiffs could reasonably rely.

1. Plaintiffs Fail To Allege
   Particular Facts Concerning the Alleged Misstatements Made by Leedom

Rule 9(b) requires that when a complaint alleges fraud, "the circumstances constituting

the fraud ... shall be stated with particularity." See Fed. R. Civ. P. 9(b). The PSLRA requires plaintiffs to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1) (2007). The complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Xerion Partners I LLC, 474 F. Supp. 2d at 516 (citation omitted). In short, "a plaintiff must set forth the who, what, when, where and how of the alleged fraud." Id. (citations omitted).

Plaintiffs fail to allege that Leedom made any misstatement with sufficient particularity pursuant to Rule 9(b) and the PSLRA. In virtually every allegation mentioning Leedom, plaintiffs lump Leedom together with the Lyle Defendants and do not distinguish between what information supposedly was provided to them by Leedom as opposed to the Lyle Defendants. See Sec. Am. Compl. ¶¶ 2, 20, 21, 22, 24, 36, 40, 57. The complaint totally fails, as it must, "to separate these defendants with specific allegations of wrongdoing as to each one of them." Gurfein v. Ameritrade, Inc., 411 F. Supp. 2d 416, 427 (S.D.N.Y. 2006) (citation omitted) (dismissing securities fraud claim, inter alia, for failure to specify allegations against each defendant). Plaintiffs may not rely on such "blanket references to acts or omissions by all of the defendants, for each defendant named in the complaint is entitled to be appraised of the circumstances surrounding the fraudulent conduct with which he individually stands charged." Gurfein, 411 F. Supp. 2d at 426 (citation omitted). Leedom and the other defendants played very different roles in this case, and a complaint such as this one where "defendants are clumped together in vague allegations ... is unacceptable." Id at 427.

7

In all paragraphs relating to Leedom, including paragraph 35 where Leedom is mentioned without reference to the four other "Lyle Defendants," plaintiffs fail to allege the who, what, when, where, and how concerning any alleged misstatement made by Leedom. Rather, plaintiffs only make vague references to "substantial documentary and oral information," (Sec. Am. Compl. ¶ 20), "information," (Sec. Am. Compl. ¶¶ 21, 22, 35), "pre-acquisition data" (Sec. Am. Compl. ¶ 22) and "purportedly independent data" (Sec. Am. Compl. ¶ 35). These unspecified allegations come nowhere close to meeting the particularity standards of Rule 9(b) and the PSLRA. Rombach v. Chang, 355 F.3d 164, 174 (2d Cir. 2004) (plaintiffs may not simply cite to unspecified "data" without giving a source for such data, and making clear why and how the data was false); Whitely v. Comsat Corp., 00 Civ. 9401 (WHP), 2001 U.S. Dist. LEXIS 16114, at *19-20 (S.D.N.Y. Sep. 25, 2001) (dismissing section 10(b) and Rule 10b-5 claim for failure to allege with particularity fraudulent misstatements or omissions and facts to show why such misstatements were misleading).[2]

### 2. Plaintiffs Fail To Allege Particular Facts Showing a Strong Inference of Scienter

Plaintiffs must also plead particularized facts giving rise to a "strong inference" that defendant acted with scienter. 15 U.S.C. § 78u-4(b)(2) (2007); ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007). Plaintiffs must allege particularized facts either (1) showing that a defendant had both motive and opportunity to commit fraud, or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness. ATSI Commc'ns, Inc., 493 F.3d at 99 (citation omitted). Under the recent holding of the Supreme Court in Tellabs, the inference of scienter "must be more than merely 'reasonable' or 'permissible'–it must be cogent

---

[2] Plaintiffs make no allegations that Leedom prepared or otherwise played any role in the preparation of Nice Cars Companies' "financial statements" that are the subject of Paragraph 21. Indeed, Leedom did not.

8

and compelling...and at least as compelling as any opposing inference one could draw from the facts alleged." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2510, 168 L. Ed. 2d 179 (2007).

Plaintiffs fail to allege facts giving rise to a "strong inference" of scienter. The only "motives" plaintiffs attempt to attribute to Leedom are common ones shared by all corporations -- i.e., that Leedom acted in its own business interests and to protect its business reputation. Sec. Am. Compl. ¶¶ 33, 34. Such common motives do not form the basis of a securities fraud claim under settled law. See Chill v. Gen. Elec. Co., 101 F.3d 263, 268 (2d Cir. 1996) (desire to maintain the appearance of success and corporate profitability insufficiently concrete to qualify as motive); see also Kalnit v. Eichler, 264 F.3d 131, 140 (2d Cir. 2001) (scienter allegations are insufficient when plaintiffs alleged conclusory motives such as avoidance of personal liability); Xerion Partners I LLC, 474 F. Supp. 2d at 519 (general allegations of economic self-interest are insufficient to plead scienter); In re Polaroid Corp. Sec. Litig., 465 F. Supp. 2d 232, 246 (S.D.N.Y. 2006) (ubiquitous motives such as a desire to retain a business relationship are insufficient to establish scienter).

In addition, plaintiffs allege no specific facts that support the motives plaintiffs attempt to ascribe to Leedom. Plaintiffs allege that the actual funding of the Nice Cars Companies was provided not by Leedom, but by separate credit unions, and that Leedom merely serviced those loans. Sec. Am. Compl. ¶ 18, 33. Plaintiffs do not explain how or why Leedom would suffer "substantial losses" if the Nice Cars Companies defaulted on loans that were not made by Leedom itself, and that in any event were, as plaintiffs acknowledge, still fully collateralized at all times prior to the sale of the Nice Cars Companies. Indeed, having a performing, fully collateralized loan paid off early would end both Leedom's interest in the loan and its

opportunity to continue earning its servicing fees. Plaintiffs also do not explain how or why Leedom would be liable to the lender credit unions, even assuming the credit unions were to suffer losses on the loans. In fact, plaintiffs offer no specific allegation as to what concrete benefit would redound to Leedom as a result of a "scheme" to induce Manchester into buying the Nice Cars Companies' stock. See In re Citigroup, Inc. Sec. Litig., 330 F. Supp. 2d 367, 380 (S.D.N.Y. 2004) (plaintiffs failed to allege scienter where facts supporting allegations indicated only a desire to maintain the fact or appearance of corporate profitability, rather than "some concrete and personal" benefit to defendant).

To the extent plaintiffs seek to establish scienter through "strong circumstantial evidence of conscious misbehavior or recklessness," they have failed to do so. Plaintiffs must allege particularized facts that the defendant engaged in "conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." Kalnit, 264 F.3d at 142 (citation omitted). Because plaintiffs fail to allege facts showing a motive to commit fraud, "the strength of the circumstantial allegations [of conscious misbehavior] must be correspondingly greater." Id. (citation omitted). Plaintiffs completely lack specific allegations suggesting conscious misbehavior or recklessness by Leedom. In addition to the fact that plaintiffs fail to cite a single fact supporting any allegation that Leedom even made any misstatement, plaintiffs also fail to point to any specific statement, document or person that can corroborate allegations that Leedom knew, should have known, or had access to information that the financial condition of the Nice Cars Companies was anything other than what was being reported to Manchester. See Goplen v. 51job, Inc., 453 F. Supp. 2d 759, 769 (S.D.N.Y. 2006) (plaintiffs failed to identify any documents, meetings, or reports showing that defendants knew

or should have known that press release was misstated). This is no surprise because Leedom had no such knowledge.

      3.      Plaintiffs Fail To Allege
               Particular Facts Showing Reliance and a Duty to Disclose

The Supreme Court's recent decision in Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc. narrowed the liability of non-sellers in an action under section 10(b). After reiterating that there is no aiding and abetting liability under section 10(b), the Court held that actions taken "in the marketplace for goods and services, [and] not in the investment sphere" are not actionable where "investors cannot be said to have relied upon any of respondents' deceptive acts in the decision to purchase or sell securities." No. 06-43, 552 U.S. ___, slip op. at 16 (Jan. 15, 2008). Leedom was not part of the securities transaction in this case. It was just a loan servicer acting in the ordinary course of business in the commercial loan market, and it owed no duty to plaintiffs, with whom it had no business relationship whatsoever. Plaintiffs were not entitled to, and did not, reasonably rely upon Leedom in agreeing to purchase the Nice Cars Companies' stock, and no factual allegations support a different conclusion.

Plaintiffs must allege that Leedom had a duty to disclose in order to allege a claim for nondisclosure of material information. See Alexandra Global Master Fund, Ltd. v. IKON Office Solutions, Inc., 06 Civ. 5383 (JGK), 2007 U.S. Dist. LEXIS 52546, at *11 (S.D.N.Y. July 20, 2007). Such a duty does not arise from the mere possession of material, nonpublic information, rather "a duty to disclose or abstain arises only from 'a fiduciary or other similar relation of trust and confidence between [the parties to the transaction].'" Id. at *11-12 (citations omitted). Plaintiffs have not alleged any facts to support an allegation that Leedom was in possession of any material information. As importantly, plaintiffs have alleged no fiduciary or trust relationship between Leedom and plaintiffs, because, in fact, no such relationship ever existed.

11

Leedom was merely the loan servicer to the Nice Cars Companies; it was never a party to any transaction with any plaintiff and had no involvement in plaintiffs' investment decisions. See, e.g., Gershon v. Wal-Mart Stores, 901 F. Supp. 128, 131 (S.D.N.Y. 1995) (securities fraud action dismissed when defendant retailer had no duty to disclose to the shareholders of its wholesale supplier because defendant and shareholders lacked the requisite fiduciary relationship). Plaintiffs' claim under section 10(b) must fail.

### B. Plaintiffs Fail to Plead Adequately a Claim Under Section 20(a) of the Exchange Act

A claim under section 20(a) of the Exchange Act for control person liability requires: (1) an underlying primary violation by the controlled person; (2) control over the controlled person; and (3) that the controlling person was, in some meaningful sense, a culpable participant in the controlled person's primary violation. In re Deutsche Telekom AG Sec. Litig., 00 Civ. 9475 (SHS), 2002 U.S. Dist. LEXIS 2627, at *17 (S.D.N.Y. Feb. 20, 2002). Conclusory allegations of control over the controlled person, without supporting facts, "are insufficient for the assertion of liability" under section 20(a). Id. at *20. With respect to culpable participation, the heightened PSLRA standard requires that plaintiffs "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." Id. at *17-18; 15 U.S.C. § 78u-4(b)(2) (2007).

Plaintiffs' "control person" claim suffers from the same fatal flaw as the rest of the Second Amended Complaint: a complete lack of supporting facts. In the first place, plaintiffs allege a violation of section 20(a) against both the Lyle Defendants and Leedom. Plaintiffs fail, however, to allege who was the control person and who was controlled, let alone make any allegations as to how one controlled the other. In any case, assuming the allegation is that Leedom was the control person, plaintiffs fail to allege any facts that Leedom had any control

over the Lyle Defendants or was a "culpable participant" in any alleged securities law violation. See Cohen v. Citibank, N.A., 954 F. Supp. 621, 629 (S.D.N.Y. 1996) (no allegations except conclusory statements supported an inference that defendant bank controlled or had the power to control co-defendant investment advisor); see also In re Deutsche Telekom AG Sec. Litig., 2002 U.S. Dist. LEXIS 2627 at *19 (no control person status found for defendant that was 22% shareholder in co-defendant corporation).

## POINT II

### PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

Plaintiffs base jurisdiction for the Second Amended Complaint solely on the federal claims alleged under sections 10(b) and 20(a) of the Exchange Act. Sec. Am. Compl. ¶ 6. Because the federal securities law claims should be dismissed, plaintiffs' state law claims should be dismissed for lack of subject matter jurisdiction. See, e.g., Gurfein, 411 F. Supp. 2d at 428 (dismissing remaining state claims after federal securities claims dismissed); Giant Group, Ltd. v. Sands, 142 F. Supp. 2d 503, 514 (S.D.N.Y. 2001) (same); Mercury Air Group, Inc., v. Jet USA Airlines, 97 Civ. 3473 (LMM), 1998 U.S. Dist. LEXIS 13159, at *22-23 (S.D.N.Y. Aug. 26, 1998) (same); Pallickal v. Technology Int'l, 94 Civ. 5738 (DC), 1996 U.S. Dist. LEXIS 4039, at *9 (S.D.N.Y. Apr. 3, 1996) (same).

Even if the Court retains jurisdiction, however, each of plaintiffs' state law claims should be dismissed for failure to state a claim as set forth in Points III-V, infra.

## POINT III

### PLAINTIFFS' SECOND CLAIM FOR COMMON LAW FRAUD SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

To state a claim for common law fraud under New York law, a plaintiff must show (1)

the defendant made a material false representation; (2) the defendant intended to defraud the plaintiff thereby; (3) the plaintiff reasonably relied upon the representation; and (4) the plaintiff suffered damage as a result of such reliance. Banque Arabe Et Internationale D'Investissement v. Maryland Nat'l Bank, 57 F.3d 146, 153 (2d Cir. 1995). Because the elements of a common law fraud claim are "substantially identical to those governing section 10(b), the identical analysis applies." Morse v. Weingarten, 777 F. Supp. 312, 319 (S.D.N.Y. 1991) (because complaint failed to sufficiently plead a section 10(b) claim, common law fraud claims must also be dismissed). Just like a federal securities fraud claim, common law fraud in federal court must be pled with particularity under Rule 9(b), which requires that the plaintiff detail the alleged statements (or omissions) that were allegedly fraudulent, identify the speaker and where and when the statements (or omissions) were made, and explain why the alleged statements (or omissions) were fraudulent. Harsco Corp. v. Segui, 91 F.3d 337, 347 (2d Cir. 1996) (affirming dismissal of fraud claim when complaint failed to allege particular facts in accordance with Rule 9(b)'s requirements).

The "identical analysis" performed in Point I regarding the claims brought under section 10(b) and Rule 10b-5 applies with equal force to plaintiffs' common law fraud claim set forth in their Second Claim. Therefore, plaintiffs' common law fraud claim should be dismissed for the same reasons that their federal securities law claim should be dismissed.

### POINT IV

### PLAINTIFFS' THIRD CLAIM FOR RESCISSION SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

Plaintiffs' Third Claim for rescission as to Leedom is nonsensical. Leedom was not a party to the Agreements, and any claim for rescission against it by plaintiffs is completely misplaced. See Grace v. Rosenstock, 228 F.3d 40, 50 (2d Cir. 2000) (court noted in dicta that

rescission is only a "theoretically permissible remedy" as against the party that actually transacted with plaintiffs). In any event, as set forth in Points I and III, plaintiffs allege no facts giving rise to any cause of action against Leedom for securities or common law fraud and, therefore, can state no claim for rescission even if it was a permissible remedy as to Leedom.

## POINT V

### PLAINTIFFS' EIGHTH CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

Plaintiffs' Eighth Claim is against Leedom for tortious interference with contract. To state a claim for tortious interference with contractual relations under New York law, a plaintiff must allege (1) the existence of a valid contract between itself and a third party for a specific term; (2) defendant's knowledge of that contract; (3) defendant's intentional procuring of its breach; and (4) damages. Mina Inv. Holdings Ltd. v. Lefkowitz, 16 F. Supp. 2d 355, 359 (S.D.N.Y. 1998). In addition, a plaintiff must assert that defendant's actions were the "but for" cause of the alleged breach, that is, there would have been no breach but for the activities of the defendant. Id. The pleadings may not be conclusory, rather "they must be supported by sufficient allegations of fact." Id. (citation omitted).

Plaintiffs have not pled any facts to support an allegation that Leedom intentionally procured the alleged breach of the Lyle Defendants' employment contracts. Rather, plaintiffs allege only in a conclusory way that Leedom is "acting in concert" with the Lyle Defendants and otherwise is "assisting the Lyle Defendants in their unlawful efforts." Sec. Am. Compl ¶¶ 59, 60. Such conclusory allegations fail to give rise to any cause of action under settled case law. See 150 E. 58th St. Partners, L.P. v. Wilkhahn Wilkening & Hahn GmbH & Co., 97 Civ. 4262 (SHS), 1998 U.S. Dist. LEXIS 1701, at *4 (S.D.N.Y. Feb. 13, 1998) (claim based on conclusory allegations that defendant actively induced and persuaded tenant to breach its contract, and that

defendant and the tenant conspired together, without any underlying facts, must fail).

Plaintiffs also fail to plead facts showing "but for" causation -- i.e., that but for Leedom's alleged interference, the Lyle Defendants would not have breached their employment contracts. In fact, plaintiffs allege the exact opposite. Plaintiffs allege that the Lyle Defendants, even before they were terminated, "began to scheme" to open their own used car dealerships using the proprietary and confidential information they had developed during their employment with plaintiffs. Sec. Am. Compl. ¶ 61. Plaintiffs contend that the Lyle Defendants either were breaching or already were predisposed to breaching their employment agreements during their employment with plaintiffs. Plaintiffs do not allege, because they cannot, that the Lyle Defendants would have only breached their agreement with Leedom's participation. See Mina Inv. Holdings Ltd., 16 F. Supp. 2d at 360 (once plaintiffs allege facts that the breaching party was predisposed toward breaching its agreement, the claim for tortious interference must be dismissed for failure to plead "but for" causation). Accordingly, plaintiffs' claim of tortious interference with contract against Leedom must fail. See Granite Partners, L.P. v. Bear, Stearns & Co., Inc., 17 F. Supp. 2d 275, 294 (S.D.N.Y. 1998) (dismissing claim for tortious interference with contract when alleged breaching party was predisposed to breach and would have done so independent of defendant's participation).

Finally, plaintiffs' tortious interference claim fails because they have not alleged any damages from the supposed conspiracy between the Lyle Defendants and Leedom. As plaintiffs' own allegations make clear, the purported "conspiracy" among Leedom and the Lyle Defendants has not even resulted in the actual opening of any used car dealerships, let alone any that are competing with plaintiffs. See Sec. Am. Compl. ¶ 59. As such, plaintiffs fail to allege damages resulting from the purported tortious interference, and their claim must fail.

16

## CONCLUSION

For the foregoing reasons, the Second Amended Complaint should be dismissed in its entirety, with prejudice, as against defendant Leedom. Plaintiffs should not be granted leave to amend for a third time. Plaintiffs have already filed two amended complaints, and the next one would be their fourth attempt to allege relevant facts. Because it is overwhelmingly apparent that plaintiffs are incapable of alleging facts to support any claim as to Leedom, granting plaintiffs leave to amend their allegations for a third time would be futile. See, e.g., Koehler v. Bank of Bermuda (New York) Ltd., 209 F.3d 130, 136 (2d Cir. 2000), amended by 229 F.3d 424 (2d Cir. 2000) (affirming denial of leave to amend for second time concluding amendment would be futile because plaintiffs had not, and could not, plead the elements of a securities fraud claim).

Dated: New York, New York
      January 18, 2008

                              Respectfully submitted,

                              KING & SPALDING LLP

                          By: /s/ Richard T. Marooney
                              Richard T. Marooney (RM-0276)
                              Mordecai Geisler (MG-9203)
                              1185 Avenue of the Americas
                              New York, New York 10036-4003
                              Telephone: (212) 556-2100
                              Fax:       (212) 556-2222

OF COUNSEL:
TANNER & GUIN, LLC
Junius F. Guin
Justin G. Williams
Thomas W. Scroggins
Capitol Park Center
2711 University Boulevard
Tuscaloosa, Alabama 35401
Telephone: (205) 633-0200
Fax:       (205) 633-0290

                              *Counsel for Defendant Leedom &*
                              *Associates, LLC*