EXHIBIT C

# MANCHESTER INC.

100 Crescent Court, 7th Floor
Dallas, TX 75201
(214) 459-3230
(214) 459-8035 facsimile

October 2, 2007

Ray Lyle
Nice Cars, Inc.
990 Battlefield Parkway
Ft. Oglethorpe, GA 30742

Dear Ray:

This letter is to confirm our understandings you and Manchester, Inc. reached today based on your discussions with me. Pursuant to our understanding you, on behalf of yourself, your wife and your children (collectively the "Lyles") have agreed to settle all past, present and future potential disputes between the Lyles, on the one hand, and Manchester, Inc., Nice Cars AcquisitionCo, Inc., Nice Cars Acceptance AcquisitionCo, Inc., Nice Cars Funding, LLC and all subsidiaries and affiliates of any of these companies, and their respective officer, directors and employees (collectively "Manchester"), Marvin Keith ("Keith") and Palm Beach Multi-Strategy Fund, L.P. ("Palm Beach"), on the other hand in any way related to, or arising out of, the acquisition ("Acquisition") of Nice Cars, Inc. and Nice Cars Capital Acceptance, Inc. (collectively "Nice Cars") or the operation of the Nice Cars business whether before or after the Acquisition on the following terms.

The Lyles will pay the following to, or for the benefit of, Manchester:

1. a cash payment to Palm Beach of $7 million for the benefit of Manchester;

2. Lyles will cancel all outstanding unpaid indebtedness owed to them by Manchester and/or its subsidiaries, including all accrued interest (exclusive of the advances made September 27, 2007);

3. Return of all the Manchester stock the Lyles received as part of the consideration for the acquisition of Nice Cars, a total of 6,187,500 Manchester shares;

4. Ray and Victoria Lyle would agree to assign to Manchester their interest in, an amount equal to the tax benefit derived from operating expenses, charge-backs and related operating losses carried back to tax years prior to 2007. Ray and Victoria Lyle and their representatives would work with Manchester and its representatives to achieve the tax benefits to be derived by filing federal and state tax returns including amended returns for prior tax years.

Ray Lyle
Nice Cars, Inc.

October 2, 2007
Page 2 of 3

5.  In reliance on the good faith efforts of the parties to finalize the terms of this settlement, the parties hereby agree that all statutes of limitation with respect to any claim that the Lyles may have against Manchester and Palm Beach, and any claim that Manchester and/or Palm Beach have against the Lyles shall be tolled until the earlier of the execution of the settlement agreement or 10 days after notice by any party to the other parties that they will not proceed with the settlement contemplated by this letter.

6.  As part of the settlement, the Lyles, on the one hand, and Manchester, Keith and Palm Beach, on the other hand, will execute mutual global full releases, releasing the Lyles, on the one hand, and Manchester, Keith and Palm Beach, on the other hand, from any and all obligations and claims, whether known or unknown, foreseen or unforeseen, whether fixed or contingent, whether liquidated or unliquidated, matured or unmatured, direct, indirect or consequential, which any party ever had, now has or may have in the future or arising out of or in any way related to: (i) the Share Purchase and Exchange Agreements dated October 4, 2006; (ii) the Employment Agreements executed by the Lyles; (iii) the operation of the Nice Cars business whether before or after the Acquisition.

7.  The parties acknowledge that Ray Lyle is still the either the lessee or the guarantor of Nice Cars East Ridge lease and Dalton lease and these leases have a total future lease rental obligation of approximately $131,870 (before the October 2007 rent is paid) and the definitive agreement will include provisions to either escrow the future rental payments or to provide indemnifications to the Lyles for this potential lease obligation and the Lease Guaranty which was executed by Keith as part of the Acquisition will remain in full force and effect.

8.  We would expect to execute a definitive global settlement and release agreement reflecting this agreement by this Friday.

Except for ¶5, this is a nonbinding expression of the intention of the parties with respect to the proposed settlement. The parties intend to enter into a binding definitive settlement agreement reflecting the terms in this letter and additional terms.

My signature below on behalf of Manchester, acts as confirmation and acceptance on behalf of the Manchester entities. A facsimile signature or scanned signature of this letter shall have the same legal effect as an original signature.

Very truly yours,

Richard D. Gaines
Executive Vice President

70689667077

OCT 02, 2007 01:43P

Ray Lyle
Nice Cars, Inc.

October 2, 2007
Page 3 of 3

ACCEPTED AND AGREED TO:

_____
Ray Lyle

_____
Marvin Keith

Palm Beach Multi-Strategy Fund, L.P.
By: PBL Holdings

_____
Managing Director

_____
Managing Director

Page 4                    70986670LL                    OCT 02,2007 01:43P

Ray Lyle                          October 2, 2007
Nice Cars, Inc.                   Page 3 of 3

ACCEPTED AND AGREED TO:

_____          _____
Ray Lyle                                  Marvin Keith

Palm Beach Multi-Strategy Fund, L.P.
By: PBL Holdings

_____          _____
Managing Director                         Managing Director

17076_00/0701/RLS-005170_2

OCT 02,2007 01:23P                              5708571927                              page 4

Ray Lyle                                    October 2, 2007
Nice Cars, Inc.                             Page 3 of 3

ACCEPTED AND AGREED TO:

_____                     _____
Ray Lyle                                    Marvin Keith

Palm Beach Multi-Strategy Fund, L.P.
By: PBL Holdings

_____                     _____
Managing Director                           Managing Director

171176_00AV701/RLS-003170_2

## SETTLEMENT AGREEMENT AND RELEASE

**THIS SETTLEMENT AGREEMENT AND RELEASE** (this "Agreement") is entered into as of the 4th day of October, 2007, by and among Raymond Lyle, Victoria Lyle, Raymond Lyle II, Ginger Bond and Robert Lyle, individuals, with offices at 990 Battlefield Parkway, Fort Oglethorpe, Georgia 30742 (collectively, the "Lyles"), Manchester Inc., a Nevada corporation with offices at 100 Crescent Court, 7th Floor, Dallas, Texas 75201 ("Manchester"), Nice Cars Operations AcquisitionCo, Inc., a Delaware corporation doing business in the States of Georgia and Tennessee as Nice Cars, Inc., with offices c/o Manchester ("Nice Cars Operations"), Nice Cars Acceptance AcquisitionCo, Inc., a Delaware corporation doing business in the State of Georgia and Tennessee as Nice Cars Capital Acceptance Corporation, with offices c/o Manchester ("Nice Cars Acceptance," and together with Nice Cars Operations, the "Nice Cars Companies"), Nice Cars Funding, LLC, a Delaware limited liability company with offices c/o Manchester ("Nice Cars Funding," and together with the Nice Cars Companies and Manchester, the "Manchester Parties"), Marvin Keith, Palm Beach Multi-Strategy Fund, L.P. a limited partnership with offices at 2911 Turtle Creek Boulevard, Suite 1200, Dallas, Texas 75219 ("Palm Beach" and together with the Lyles, Marvin Keith and the Manchester Parties, the "Parties" and each, a "Party").

## RECITALS:

WHEREAS, on October 4, 2006, Raymond and Victoria Lyle sold their stock in Nice Cars, Inc. to Nice Cars Operations pursuant to a Share Purchase and Exchange Agreement dated October 4, 2006 (the "Nice Cars Share Purchase and Exchange Agreement");

WHEREAS, on October 4, 2006, Raymond and Victoria Lyle sold their stock in Nice Cars Capital Acceptance Corporation (together with Nice Cars, Inc., the "Acquired Companies") to Nice Cars Acceptance pursuant to a Share Purchase and Exchange Agreement dated October 4, 2006 (the "Nice Cars Capital Share Purchase and Exchange Agreement," and together with the Nice Cars Share Purchase and Exchange Agreement, the "Share Purchase and Exchange Agreements");

WHEREAS, Marvin Keith is a Consultant to the Manchester Parties who was involved in identifying and negotiating with the Lyles and the Acquired Companies on behalf of the Manchester Parties;

WHEREAS, subsequent to the acquisition of the Acquired Companies (the "Acquisition") Raymond and Victoria Lyle have served as officers of the Nice Cars Operations and Nice Cars Acceptance;

WHEREAS, in connection with the Share Purchase and Exchange Agreements, the Manchester Parties issued to Raymond and Victoria Lyle the Purchase Note in the original principal amount of $6,930,000 (the "Purchase Note"), the S-Tax Reimbursement Note in the original principal amount of $1,577,785 (the "S Tax Note"), the Shareholder Note in the original principal amount of $627,542.77 (the "Shareholder Note"), and the Advances Note in the original principal amount of $769,872.38 (the "Advances Note" and referred to collectively herein together with

the Purchase Note, the S Tax Note and the Shareholder Note as the "Notes");

WHEREAS, in connection with the Nice Cars Share Purchase and Exchange Agreement, Nice Cars Operations entered into employment agreements with the Lyles, which were amended as of December 1, 2006 (these employment agreements, as amended, are referred to herein as the "Lyle Employment Agreements");

WHEREAS, in connection with the Share Purchase and Exchange Agreements, Marvin Keith entered into a guaranty (the "Keith Guaranty") pursuant to which Marvin Keith guaranteed to Raymond and Victoria Lyle the prompt and full payment of rent and all other sums due, arising on or after the Closing, to the landlords under certain leases into which Raymond Lyle had entered or guaranteed on behalf of the Acquired Companies;

WHEREAS, Nice Cars, Inc. subsequently merged with and into Nice Cars Operations, which commenced doing business under the trade name Nice Cars, Inc.;

WHEREAS, Nice Cars Capital Acceptance Corporation subsequently merged with and into Nice Cars Acceptance, which commenced doing business under the trade name Nice Cars Capital Acceptance Corporation;

WHEREAS, Nice Cars Funding, a wholly-owned subsidiary of Manchester, entered into a loan agreement with Palm Beach on September 28, 2006, together with ancillary agreements thereto, pursuant to which Palm Beach agreed to loan Nice Cars Funding an amount of up to $75 million (collectively, the "Loan Agreement");

WHEREAS, in connection with the Share Purchase and Exchange Agreements, Nice Cars Funding initially drew approximately $54 million from Palm Beach; and

WHEREAS, the Parties have decided it is in their mutual best interest to settle any and all disputes arising out of, and in connection with, the operation of the Nice Cars business whether before or after the Acquisition, the Share Purchase and Exchange Agreements, the Notes, the Lyle Employment Agreements, the Keith Guaranty, the Loan Agreement, and any and all other documents, agreements and understandings entered into and delivered by and between the Lyles, on the one hand, and the Manchester Parties, Marvin Keith and/or Palm Beach, on the other hand, in connection therewith.

NOW, THEREFORE, for good and valuable consideration in respect of the direct and indirect benefits of performance of the mutual promises set forth below, which consideration is deemed adequate and sufficient in all respects by all Parties hereto, the Parties agree to be legally bound as follows:

1.        Cash Payment.  In consideration for, and as a condition to, the agreements, releases, covenants and undertakings provided herein, Ray and Victoria Lyle hereby pay to Palm Beach U.S. Seven Million Dollars (US$7,000,000.00) by deposit in same-day immediately available funds into the Regions Bank collection account (account number 6301014447) in the name of Nice Cars, Inc. on or before  10:00 AM Eastern Standard time on October 5, 2007.

**2.**      <u>Cancellation of Indebtedness</u>. The Lyles hereby cancel all outstanding unpaid Indebtedness owed to any and all of them by any one or more of the Manchester Parties and their respective Affiliates, including all accrued interest"". For purposes of this Agreement, "<u>Affiliate</u>" of a specified Person means any other Person which, directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with such specified Person. "<u>Control</u>" of any Person means possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting capital stock, by contract, or otherwise. For purposes of this Agreement, "<u>Person</u>" means an individual, a corporation, a limited liability company, a partnership, a trust, an unincorporated association, a government or any agency, instrumentality or political subdivision of a government, or any other entity or organization. For purposes of this Agreement, "<u>Indebtedness</u>" means (a) all obligations for borrowed money or indebtedness or issued in substitution for or exchange for borrowed money or indebtedness (including obligations in respect of principal, accrued interest, any prepayment charges or premiums and any unpaid fees, costs, expenses, disbursements or other monetary obligations in respect thereof); (b) any indebtedness evidenced by any note, bond, debenture, guaranty, warranty or other debt security; (c) capitalized lease obligations or other obligations required to be capitalized in accordance with GAAP; (d) all obligations for reimbursement when required to be made of any obligor on any banker's acceptance or similar transactions (but excluding standby letters of credit); (e) all obligations for the deferred purchase price of any tangible or intangible personal property or real property, all conditional sale obligations under any title retention agreement (including, without limitation, any and all trade accounts payables and other accrued liability arising in the ordinary course of business); (f) any obligations with respect to any interest rate hedging or swap agreements; (g) all obligations of the type referred to in clauses (a) through (f) of any Person for the payment of which any Manchester Party (or its Affiliate) is responsible or liable, directly or indirectly, as guarantor, obligor, surety or otherwise (excluding inter-company debt); and (h) obligations of the type referred to in clauses (a) through (g) of other Persons secured by any lien on any property or asset of any Manchester Party.

**3.**      <u>Stock Transfer</u>. Ray Lyle and Victoria Lyle hereby jointly sell, assign and duly transfer to Manchester all right, title and interest in and to six million one hundred eighty seven thousand five hundred (6,187,500) shares of Manchester common stock, par value $.001 per share (represented by stock certificate numbers 2261, 2262, 2263 and 2264, copies of which are attached hereto), free and clear of any and all liens, encumbrances and options of any nature whatsoever, subject however to the sale, transfer or other disposition restrictions printed or stamped by Manchester on the face of the stock certificates and subject to all federal and state securities laws (the "<u>Stock</u>"). At execution and delivery of this Agreement, all share certificates representing such Stock are in the physical custody of counsel for the Lyles and such counsel shall upon execution by all Parties hereof immediately deliver such Stock via overnight courier to Wuersch & Gering LLP as counsel for Manchester. This Agreement shall be construed as a stock power for purposes of such sale, assignment and transfer and each of Ray Lyle and Victoria Lyle does hereby irrevocably constitute and appoint Richard D. Gaines to cause the transfer of title of said Stock on the books of Manchester in accordance with the provisions set forth in this Agreement, with full power of substitution in the premises, and to effect all actions contemplated in this Agreement pertaining to such transfer.

4.      Tax Refunds.

(a)      Ray and Victoria Lyle jointly and severally hereby assign to Manchester to the maximum extent permissible by law and agree to pay to Manchester an amount equal to the total of all Tax refunds received, if any, from any operating losses that can be carried back from the Tax Returns of the Acquired Companies for the fiscal period ending on or about October 4, 2006 (the "2006 Company Returns").  Notwithstanding the foregoing, if at any time in the future any federal or state governmental entity audits or challenges any of the Tax Returns as filed and, as a result, Ray or Victoria Lyle are required to repay to any governmental authority any amounts that comprised or made up the Tax Refunds previously paid or assigned to Manchester, Manchester agrees to promptly reimburse Ray and Victoria Lyle for all such amounts.  The Lyles do not make any representations or warranties regarding the amounts, if any, of such Tax refunds and have specifically disclosed to Manchester that no such Tax refunds are anticipated.

(b)      Ray and Victoria Lyle shall cooperate and promptly work with the Manchester Parties and their respective representatives to obtain any and all Tax refunds and Tax benefits which may be derived by filing or re-filing federal and state Tax Returns and amended Tax Returns, and any and all ancillary returns or forms related thereto, for all applicable prior tax years.  Ray and Victoria Lyle and their representatives shall have the final, absolute, and exclusive authority and obligation to prepare or cause to be prepared all such Tax Returns or amended Tax Returns, and to make all final decisions regarding the preparation and filing of the Tax Returns.  Within ten (10) business days of filing thereof, Ray and Victoria Lyle shall provide copies to Manchester of the 2006 Company Returns, all 2006 Tax Returns of Ray and Victoria Lyle, and any amended tax returns for the Acquired Companies for any period prior to October 4, 2006.

(c)      For purposes of this Agreement, "Tax" or "Taxes" "shall mean any federal, national, state, local or foreign income, gross receipts, franchise, estimated, alternative minimum, add-on minimum, sales, use, transfer, real property gains, registration, value added, excise, natural resources, severance, stamp, occupation, premium, windfall profit, customs, duties, real property, personal property, capital stock, social security, unemployment, disability, payroll, license, employee or other withholding, unclaimed funds or other tax, of any kind whatsoever, including any interest, penalties or additions to tax or additional amounts or required contributions in regard to the foregoing; and the foregoing shall include any transferee or secondary liability for a Tax and any liability assumed by agreement or arising as a result of being (or ceasing to be) a member of any affiliated group (or being included (or required to be included) in any Tax Return relating thereto) and any other tax under the jurisdiction of any governmental body exercising any regulatory or taxing authority over the assessment, determination, collection or other imposition of any tax.  "Tax Return" means any return, declaration, report, claim for refund, information return or other document (including any related or supporting schedule, statement or information) filed or required to be filed in connection with the determination, assessment or collection of any Tax of any party or the administration of any laws, regulations or administrative requirements relating to any Tax.

**5.**     <u>Mutual Release and Waiver of Claims</u>.

(a)     For the consideration stated above, the Lyles hereby jointly and severally release and discharge all of the Manchester Parties and Palm Beach and their respective shareholders, officers, directors, partners, employee employees, consultants (including, without limitation, Mr. Marvin Keith), agents, accountants, attorneys, Affiliates, representatives and successors from any and all claims, charges, complaints, covenants, responsibilities, conditions, rights, restrictions, promises, agreements, controversies, liens, demands, causes of action, obligations, damages, liabilities or Indebtedness of any nature or kind whatsoever, known or unknown, suspected or unsuspected, fixed or contingent, liquidated or unliquidated, matured or unmatured, direct, indirect or consequential, or any other nature whatsoever, which the Lyles ever had, now have, or may hereafter have against the Manchester Parties and/or Palm Beach at any time for any reason, including, without limitation, in connection with: (i) the Share Purchase and Exchange Agreements and all Notes, guaranties (excluding the Keith Guaranty), and agreements ancillary thereto; (ii) each of the respective Lyle Employment Agreements; (iii) the operation of the Nice Cars Companies' business whether before or after the Acquisition; and (iv) the Loan Agreement; provided, however, (x) the foregoing release shall not include the obligations of the Manchester Parties and their respective shareholders, officers, directors, employee employees, consultants (including, without limitation, Mr. Marvin Keith) or Palm Beach contained in this Agreement, (y) the foregoing release shall not include the Keith Guaranty with respect to the leases specified in Section 6,  and (z) nothing herein shall be construed to limit the Lyle's right to seek enforcement of the terms of this Agreement.

(b)     For the consideration stated above, each of the Manchester Parties and Manchester's consultant Marvin Keith hereby jointly and severally release and discharge all of the Lyles and their respective Affiliates, agents, attorneys, accountants, insurers, consultants, representatives, heirs, and successors, from any and all claims, charges, complaints, promises, covenants, responsibilities, conditions, rights, restrictions, agreements, controversies, liens, demands, causes of action, obligations, damages, liabilities or Indebtedness of any nature or kind whatsoever, known or unknown, suspected or unsuspected, fixed or contingent, liquidated or unliquidated, matured or unmatured, direct, indirect or consequential, or any other nature whatsoever, which the Manchester Parties or Marvin Keith ever had, now have, or may hereafter have against the Lyles at any time for any reason, including, without limitation, in connection with: (i) the Share Purchase and Exchange Agreements and all Notes, guaranties, and agreements ancillary thereto; (ii) each of the respective Lyle Employment Agreements; (iii) the operation of the Nice Cars Companies' business whether before or after the Acquisition; and (iv) the Loan Agreement; provided, however, (x) the foregoing release shall not include the obligations of the Lyles contained in this Agreement and (y) nothing herein shall be construed to limit the rights of the Manchester Parties or Marvin Keith to seek enforcement of the terms of this Agreement.

(c)    For the consideration stated above, Palm Beach hereby releases and discharge all of the Lyles and their agents, attorneys, accountants, consultants and their respective heirs and successors, from any and all claims, charges, complaints, promises, covenants, responsibilities, conditions, rights, restrictions, agreements, controversies, liens, demands, causes of action, obligations, damages, liabilities or Indebtedness of any nature or kind whatsoever, known or unknown, suspected or unsuspected, fixed or contingent, liquidated or unliquidated, matured or unmatured, direct, indirect or consequential, or any other nature whatsoever, which Palm Beach ever had, now has, or may hereafter have against the Lyles at any time in connection with: (i) the Share Purchase and Exchange Agreements and all Notes, guaranties, and agreements ancillary thereto; (ii) each of the respective Lyle Employment Agreements; (iii) the operation of the Nice Cars business whether before or after the Acquisition; and (iv) the Loan Agreement; provided, however, (x) the foregoing release shall not include the obligations of the Lyles contained in this Agreement and (y) nothing herein shall be construed to limit Palm Beach's right to seek enforcement of the terms of this Agreement.

(d)    The releases contained in Sections 5(a), 5(b) and 5(c) are contractual in nature and also constitute covenants not to sue on any matter released.

6.    Lease Liability Indemnification.

The Manchester Parties and Marvin Keith acknowledge that Ray Lyle is still either the lessee or the guarantor of Nice Cars, Inc.'s East Ridge lease (the "East Ridge Lease") and Dalton lease (the "Dalton Lease" and together with the East Ridge Lease, the "Leases") and such Leases have an aggregate total future rental obligation of approximately $131,870 (before giving effect to the payment of rent for the month of October 2007). The Manchester Parties shall indemnify and hold the Lyles harmless for any claims, losses, damages, costs or expenses (including, without limitation, reasonable fees, costs, expenses and disbursements of counsel) arising from any claims relating to (or arising in whole or in part out of) such potential lease obligation. The Keith Guaranty will remain in full force and effect in favor of the Lyles.

7.    Resignations, Transition and Compensation.

(a)    Each of the Lyles hereby resigns from their respective positions as officers and employees of the Nice Cars Companies as of the end of their respective Retention Period (as defined below)"".

(b)    During the Retention Period, the Manchester Parties and the Lyles agree that each of the Lyles shall continue to render ordinary course of business services to the Nice Cars Companies and each such Person shall be compensated at their base salary (excluding bonuses) for such period as set forth in their respective employment agreement and each such Person shall continue to be provided by the Nice Cars Companies benefits as specified on Schedule 7(b) attached hereto (excluding bonuses) to the extent previously provided by the Nice Cars Companies, provided however, except for the non-solicitation provisions in all such Lyle Employment Agreements which shall continue in full force and effect during the Retention Period with respect to the applicable Lyle party and for sixty (60) days thereafter, nothing herein

shall be construed as continuation of any terms or conditions of the Lyle Employment Agreements, including, without limitation (and without limiting any other provision of this Agreement), any bonuses, other covenants, responsibilities, conditions, continuing rights, duties, obligations or performance under any and all Lyle Employment Agreements and any and all arrangements, understandings, promises, guaranties, assurances or restrictions of any nature or kind thereto are hereby released, and the Lyles shall make no claim upon any of the other Parties to this Agreement for any compensation of any nature or kind pertaining to employment by the Nice Cars Companies.

(c)     Manchester may at any time, upon not less than 30 days advance written notice, terminate the transition services, as set forth in Section 7(a) above, of any or all of the Lyles.  On or after January 1, 2008 any or all of the Lyles may, upon not less than 30 days advance written notice, resign from providing transition services as set forth in Section 7(a) above.  The period from the date of this Agreement through the effective date of termination or resignation from transition services rendered by the Lyles is the "Retention Period".  Upon termination of the Retention Period, Manchester will promptly cause the transfer of title of the Manchester vehicle personally utilized by Raymond Lyle to his own name, free and clear of any and all liens.

(d)     During the Retention Period, no payments, commitments, or undertakings of any nature or kind, other than those made or entered in accordance with current practice as in effect immediately prior to the execution of this Agreement, shall be made or entered into by the Lyles on behalf of the Nice Cars Companies without the express prior written approval of Manchester.

(e)     The Lyles shall furthermore cooperate and make themselves available at any reasonable time during the Retention Period during ordinary business hours to the Nice Cars Companies and their attorneys, for consultation, testimony, preparation and other assistance, in the event of actual, threatened or planned litigation involving the Nice Cars Companies in which such Person's knowledge could be relevant or useful to the Nice Cars Companies.

(f)     Any announcement regarding the resignation or termination of any of the Lyles shall be mutually approved by Manchester and the Lyles which approval shall not be unreasonably withheld.

8.     <u>Non-Disparagement</u>.  From and after the date of this Agreement and solely with respect to (i) the Share Purchase and Exchange Agreements and all Notes, guaranties (excluding the Keith Guaranty), and agreements ancillary thereto; (ii) each of the respective Lyle Employment Agreements; (iii) the operation of the Nice Cars Companies' business whether before or after the Acquisition; and (iv) the Loan Agreement: (A) the Manchester Parties and Marvin Keith shall not make any disparaging statements concerning the Lyles or their employees, consultants, agents, accountants, attorneys, Affiliates and representatives; (B) Palm Beach shall not make any disparaging statements concerning the Lyles or their employees, consultants, agents, accountants, attorneys, Affiliates and representatives; and (C) the Lyles shall not make any disparaging statements concerning the Manchester Parties, Marvin Keith and Palm Beach or their shareholders, officers, directors, employees, consultants, agents, accountants, attorneys, Affiliates and representatives.  This non-

disparagement provision shall not in any way prevent the Parties from disclosing any information to their attorneys or in response to a lawful subpoena or court order requiring disclosure of information or compliance by any of the aforementioned with any laws, rules or regulations.

9.  Dispute Resolution.  Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by binding arbitration in the City, County and State of New York in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award may be entered in any court of competent jurisdiction over the parties; provided, that any controversy or claim arising solely out of the breach of Section 6 shall be settled by binding arbitration in Chattanooga, Tennessee.  The prevailing party, as determined by the arbitrators, shall be entitled to receive an award of its reasonable attorneys' fees, costs, expenses and disbursements.  To the extent reference to governing law is required in connection with any such arbitration, this Agreement shall be interpreted in accordance with the laws of the State of New York, without regard to its principles of conflicts of law; provided, that to the extent reference to governing law is required in connection with any arbitration of any controversy or claim arising solely out of the breach of Section 6, this Agreement shall be interpreted in accordance with the laws of the State of Tennessee, without regard to its principles of conflicts of law. This Agreement shall be deemed to have been jointly drafted and no provision shall be construed against a Party because that Party or its attorneys drafted that provision. Each Party shall indemnify and hold each other Party harmless for any claims, losses, damages, or expenses (including, without limitation, reasonable fees, costs, expenses and disbursements of counsel to such Party) arising from any claims relating to (or arising in whole or in part out of) any breach of this Agreement by such Party, including, without limitation, any claim the basis of which is any actual or alleged breach of performance, neglect, error, misstatement, misleading statement, omission or other act done or attempted by such Party as required under this Agreement.

10.  Representations.  Each of the Parties represents and warrants that (a) its signatory to this Agreement has full legal authority to bind that Party to all terms and conditions of this Agreement, and (b) it has not entered into any other agreement, and is not under any obligation to take or refrain from taking any action, which is inconsistent with any part of this Agreement or that would in any way limit its ability to perform all of its obligations hereunder.  The Lyles jointly and severally represent and warrant to Manchester that the Stock is free and clear of any and all liens, encumbrances and options of any nature whatsoever subject however to the sale, transfer or other disposition restrictions printed or stamped the face of the Stock certificates and subject to all federal and state securities laws and no other Party has any beneficial or legal ownership or other interest or in the Stock.

11.  Further Assurances.  The Lyles shall, at any time or from time to time after the date hereof, at the request of Manchester and Palm Beach and without further consideration, execute and deliver to Manchester and Palm Beach such other agreements, instruments, certificates, documents or confirmations, provide such

materials and information, make such filings and take such other actions as the Manchester and Palm Beach may reasonably deem necessary or desirable to fully consummate the transactions contemplated by this Agreement.

12.    Status.

(a)  Nothing in this Agreement shall be construed as an admission of liability on behalf of any Party as it was entered into for the sole purpose of avoiding cost and expense.  This Agreement shall not alter, amend or release any agreements between any of the Manchester Parties and Palm Beach which do not include the Lyles as a party thereto.

13.    Confidentiality.  The Parties acknowledge and agree that this Agreement and the actions contemplated herein and all subject matter thereof, is to remain strictly confidential in all respects.  The Parties shall not directly or indirectly disseminate the terms of this Agreement to any person or entity not a Party to this Agreement, except (i) by written agreement of the Parties; (ii) pursuant to a valid court order or subpoena; (iii) as required by law, rule or regulation; or (iv) to its affiliates, employees, officers on a need to know basis.

14.    Binding Effect. This Agreement and the releases contained herein are binding upon and shall inure to the benefit and shall be binding upon the Parties' respective successors, heirs, assigns, administrators, executors, and legal representatives and anyone who succeeds to the rights, interests or responsibilities of the respective Parties.  Except as otherwise specified herein, the provisions of this Agreement shall remain in full force and effect at all times after the execution of this Agreement by all Parties.

15.    Entire Agreement.  This Agreement constitutes the complete agreement and understanding of the Parties and supersedes any prior agreements or understandings of the Parties (whether oral or written) as to the subject matter hereof, and may be amended only in a writing signed by the Parties.  The section headings in this Agreement shall not affect its meaning.

16.    Knowing and Voluntary Agreement.  Each of the Parties acknowledges that: (i) it has carefully read this Agreement and fully understands its meaning; (ii) it had full and adequate opportunity to review this Agreement with its freely chosen attorney or attorneys before signing it, and has done so to the full extent it believes necessary; (iii) it is signing this Agreement knowingly, voluntarily, and without any coercion or duress; and (iv) everything it is receiving for signing this Agreement is described herein, and no other promises or representations have been made to cause it to sign this Agreement.

17.    Assignment.  None of the Parties may assign any of its rights or obligations hereunder without the prior written consent of all of the other Parties.

18.     <u>Amendment</u>. This Agreement cannot be amended or waived, except by a written document signed by the Party against whom enforcement of any such amendment or waiver is sought.

19.     <u>Non-waiver</u>. In the event either Party violates any provision of this Agreement, the failure of the other Party to enforce any of its rights at that time shall not constitute a waiver by the other Party of the right to enforce any provision of this Agreement at any time.

20.     <u>Notices</u>.  Any notice required or permitted under this Agreement must be in writing to be effective, and shall be considered to have been properly given the same day that is personally delivered or one (1) business day after it is deposited with a nationally known, reputable private delivery service for delivery the earliest possible next business day, in either case addressed to the address of the respective Party set forth on Exhibit A hereto.

21.     <u>Severability</u>.  Any provision of this Agreement which is invalid or unenforceable in any jurisdiction shall be ineffective to the extent of such invalidity or unenforceability without invalidating or rendering unenforceable the remaining provisions hereof, and any such invalidity or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction. If any provision is held to be invalid or unenforceable, such provision shall be construed by the appropriate judicial body by limiting or reducing it to the minimum extent necessary to make it legally enforceable.

22.     <u>Counterparts</u>. This Agreement may be executed in more than one counterpart, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.

[Signature Page Follows]

IN WITNESS WHEREOF, the Parties have executed and delivered this Agreement, as of the date first written above.

**MANCHESTER INC.**

By: _____
     Name:
     Title:

**NICE CARS OPERATIONS ACQUISITIONCO, INC.**

By: _____
     Name:
     Title:

**NICE CARS ACCEPTANCE ACQUISITIONCO, INC.**

By: _____
     Name:
     Title:

**NICE CARS FUNDING, LLC**

By: _____
     Name:
     Title:

**PALM BEACH MULTI-STRATEGY FUND, L.P.**

BY:  PALM BEACH LINKS CAPITAL, L.P.,
     its general partner

     BY:  PBL HOLDINGS, LLC,
         its general partner

         By:_____
           Managing Director

         By:_____
           Managing Director

_____

Raymond Lyle


_____

Victoria Lyle


_____

Raymond Lyle II


_____

Ginger Bond


_____

Robert Lyle


_____

Marvin Keith

Settlement Agreement and Release                                    October 4, 2007

Exhibit A

Address for Notices

Schedule 7(b)

-------------------------------------------------------------------------------------------------

1. Medical Insurance
2. Paid vacation time or payment for accrued but untaken vacation time
3. Vehicle allowance
4. 401(k) plan and contributions
5. Cellular telephone
6. Home-office cost

-------------------------------------------------------------------------------------------------