Judith A. Lockhart
Gerald W. Griffin
Emily Milligan
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, New York 10001
(212) 732-3200

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

| | |
|---|---|
| MANCHESTER INC., NICE CARS FUNDING, LLC, NICE CARS ACCEPTANCE ACQUISITIONCO, INC. AND NICE CARS OPERATIONS ACQUISITIONCO, INC., | :<br>:<br>:   <u>07 CIV 8659 (LTS)</u><br>:<br>: |
|          Plaintiff, | :<br>: |
|     - against - | :<br>: |
| RAY LYLE, VICTORIA LYLE, GINGER BOND, RAY LYLE II, ROBERT LYLE, AND LEEDOM & ASSOCIATES<br>        Defendants. | :<br>:<br>:<br>: |

------------------------------------------------------------x

## DEFENDANTS' MEMORANDUM OF LAW IN
## SUPPORT OF THEIR MOTION TO DISMISS PURSUANT
## TO FEDERAL RULES OF  CIVIL  PROCEDURE 9(b), AND 12(b)(2) AND (6)

# TABLE OF CONTENTS

**Page No.**

TABLE OF AUTHORITIES…………….…..……………………………………………..iii

PRELIMINARY STATEMENT ….…………………………………………………………… 1

STATEMENT OF FACTS ….……………………………………………………………… 3

      A.      Manchester Seeks to Acquire Nice Cars…..…………………………………..3
      B.      The Purchase Agreements…………………………………………………5
      C.      Merger and Indemnification Clauses…………………………………………...7
      D.      The Alleged Misrepresentations by Ray Lyle……………………………8
      E.      The Draft Settlement Agreement………………………………………9

MOTION TO DISMISS STANDARD…………………………………………………… 10

ARGUMENT…………………………………………………………………………… 10

I.      MANCHESTER FAILS TO PLEAD SECURITIES FRAUD WITH SUFFICIENT
      PARTICULARITY (COUNTS 1, 3, 4, 9 AND 10) ………………………………… 10

A.      Manchester Fails to Plead the Who, What Where, When, How and Why of Fraud…….. 11
      1.      Historical Losses and Bad Debt Reserves ………………………………….. 12
      2.      Change of Credit Standards …………………………………………… 13
      3.      Alleged Misrepresentations By Mr. Lyle …………………………………… 13
B.      The Complaint Fails to Plead Scienter With Particularity…………………………….. 15
C.      The Claims For Partial Rescission, Replevin, Constructive Trust, And Breach Of
      Fiduciary Duty Must Be Dismissed Because They Are Not Pled With Particularity …… 18

II.      MANCHESTER FAILS TO PLEAD ADDITIONAL ELEMENTS OF SECURITIES
      FRAUD (COUNTS 1 AND 3)………………………………………………… 20

A.      Manchester Has Not Alleged Material Misrepresentations And Omissions ……………… 20
B.      Manchester Has Not Pled Loss Causation ……………………………………… 22
C.      Rescission Is Not A Proper Remedy For Securities Fraud …………………………… 24
D.      The Complaint Fails to Plead A Claim Under Section 20(a)………………………… 25

III.      MANCHESTER'S FRAUD CLAIMS ARE BARRED BY THE MERGER CLAUSES
      IN THE PURCHASE AGREEMENTS AND SHOULD BE DISMISSED FOR
      RESTATING ITS INDEMNIFICATION CLAIM (COUNTS 1 AND 2) …………………… 25

IV.      THE LYLE CHILDREN SHOULD BE DISMISSED (ALL COUNTS) …………………… 27

A.      The Court Lack Personal Jurisdiction Over The Lyle Children …………………… 27
B.      The Complaint Fails to Plead Particularity As To The Lyle Children ………………… 28
C.      Manchester's Claim of Aiding and Abetting Is Unavailing ………………………… 29

V.      THE COURT SHOULD DECLINE TO EXERCISE   SUPPLEMENTAL
        JURISDICTION OVER   MANCHESTER'S REMAINING STATE LAW CLAIMS
        (COUNTS 2-7 and 9-12) ................................................................................. 30

VI.     MANCHESTER'S STATE LAW CLAIMS ARE   UNAVAILING
        (COUNTS 2, 3, 5, 6, 11 AND 12) ................................................................... 31

A.      Manchester Fails to State a Claim for Common Law Fraud ............................ 31
B.      Manchester Fails to State a Claim For Indemnification ................................... 32
C.      Manchester Fails to State a Claim for Conversion ......................................... 33
D.      Manchester Fails to State a Claim For A Declaratory Judgment..................... 33
E.      Manchester Fails to State A Claim For Breach of a Settlement Agreement ................... 34

VII.    CONCLUSION................................................................................................... 36

# TABLE OF AUTHORITIES

## Federal Cases

120 Greenwich Dev. Ass'n, LLC v. Reliance Ins. Co., No. 01 Civ. 8219, 2004 WL 1277998 (S.D.N.Y. June 8, 2004)......................................................................................32

Affiliated Ute Citizens of Utah v. U.S., 406 U.S. 128 (1972) ........................................24

Am. Mobile Commc'n, Inc. v. Nationwide Cellular Serv., Inc., No. 91 Civ. 3587, 1992 WL 232058 (S.D.N.Y. Sept. 3, 1992).....................................................................................19

Apace Commc'n Ltd. v. Burke, 07-CV-6151, 2007 U.S. Dist. Lexis 85082 (W.D.N.Y. Nov. 16, 2007) ............................................................................................................12, 15, 18, 28

ATSI Commc'n, Inc. v. Shaar Fund, Ltd., 493 F.3d 87 (2d Cir. 2007).............................12

Basic Inc. v. Levinson, 485 U.S. 224 (1988) ...................................................................20

Bates Advertising USA, Inc. v. McGregor, 282 F. Supp.2d 209 (S.D.N.Y. 2003) .......................26

Bernheim v. Litt, 79 F.3d 318 (2d Cir. 1996) ...................................................................10

Boguslavsky v. Kaplan, 159 F.3d 715 (2d Cir. 1998) .......................................................25

Bridgestone/Firestone, Inc. v. Recovery Credit Serv., Inc., 98 F.3d 13 (2d Cir 1996) .................25

Central Bank of Denver N.A. v. First Interstate Bank of Denver, N.A. 511 U.S. 164 (1994)......29

Chambers v. Time Warner, Inc., 282 F.3d 147 (2d Cir. 2002)..........................................3

Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998) .................................................10

Chase v. Columbia Nat'l Corp., 832 F. Supp. 654 (S.D.N.Y. 1993).................................31

Ciaramella v. Reader's Digest Ass'n, Inc., 131 F.3d 320 (2d Cir. 1997)..............................34, 35

Ciro, Inc. v. Gold, 816 F. Supp. 253 (D.Del. 1993)..........................................................31

Daly v. Castro Lines, 30 F. Supp. 2d 407 (S.D.N.Y. 1998) .............................................28

DiLeo v. Ernst & Young, 901 F.2d 624 (7th Cir. 1990)..............................12, 15, 16, 18

DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242 (2d Cir. 1987) .....................11, 28

Dura Pharm, Inc. v. Broudo, 544 U.S. 336 (2005) ...................................................22, 24

Dyncorp v. GTE Corp., 215 F.Supp.2d 308 (S.D.N.Y. 2002)........................................26

Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc., 343 F.3d 189
    (2d Cir. 2003)..................................................................................22, 26

Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York, 375 F.3d 168 (2d
    Cir. 2004)......................................................................................11, 12

Ganino v. Citizens' Utilities Co., 228 F.3d 154 (2d Cir. 2000)......................................3

Gross v. Empire Health Choice Assurance, Inc., 2007 WL 2066390
    (N.Y. Sup Ct., N.Y. County 2007)........................................................................33

Gurary v. Winehouse, 235 F.3d 792 (2d Cir. 2000) ....................................................24

Halperin v. EBanker USA.Com, Inc., 295 F.3d 352 (2d Cir. 2002)...............................20

Herbstein v. Cruetman, 768 F. Supp. 79 (S.D.N.Y. 1991) ...........................................27

Highlands Ins. Co. v. PRG Brokerage, Inc., No. 01 Civ. 2272, 2004 WL 35439
    (S.D.N.Y. Jan. 6, 2004)................................................................................12, 15

Hoxworth v. Binder, Robinson & Co. Inc., 903 F.2d 186 (3d. Cir 1990) ......................24

In re Charter Litig. Comm. Inc. Securities Litig., 443 F.3d. 987 (8th Cir. 2006)..........29

In re Prudential Securities Inc. Ltd. P'ships Litig., 930 F. Supp. 68 (S.D.N.Y. 1996)..................20

Joffee v. Lehman Bros., Inc., No. 04 Civ. 3507, 2005 WL 1492101 (S.D.N.Y. June 23, 2005) ..32

Kalnit v. Eichler, 264 F.3d 131 (2d Cir. 2001) .........................................................18

Kramer v. Time Warner, Inc., 937 F.2d 767 (2d Cir. 1991).........................................10

Lehigh Valley, Indus., Inc. v. Birenbaum, 527 F.2d 87 (2d Cir. 1975).........................28

Lentell v. Merrill Lynch & Co., 396 F.3d 161 (2d Cir. 2005) ........................... 10, 22-24

Living Music Records, Inc. v. Moss Music Group, Inc., 827 F. Supp. 974 (S.D.N.Y. 1993).......30

Luce v. Edelstein, 802 F.2d 49 (2d Cir. 1986).............................................................20

Madison Models, Inc. v. Casta, 01 Civ. 9323, 2003 WL 21978628 (S.D.N.Y. Aug. 20, 2003) ...27

Manela v. Gottlieb, 784 F. Supp. 84 (S.D.N.Y. 1992) ...........................................30, 31

Mills v. Polar Molecular Corp., 12 F.3d 1170 (2d Cir. 1993) ......................................28

Novak v. Kasaks, 216 F.3d 300 (2d Cir. 2000) ...............................................11, 15, 16

Osan Ltd v. Accenture LLP, 454 F. Supp.2d 46 (E.D.N.Y. 2006) ...........................25, 26

Pilates, Inc. v. Pilates Inst., Inc., 891 F. Supp. 175 (S.D.N.Y. 1995) ...........................27

Pitchell v. Callan, 13 F.3d 545 (2d Cir. 1994) ...............................................................30

Rella v. N. Atl. Marine, Ltd., No. 02 Civ 8573, 2004 WL 1418021 (S.D.N.Y. June 23, 2004) ..33

Ritchie Cap. Mgmt., L.L.C. v. Coventry First LLC, No. 07 CIV 3494, 2007 WL 2044656
    (S.D.N.Y. July 17, 2007) .........................................................................................27

Rolf v. Blyth, Eastman Dillon & Co., Inc., 570 F.2d 38 (2d Cir. 1978).........................24

Rombach v. Chang, 355 F.3d 164 (2d Cir. 2004).....................................................21, 25

Rosenberg v. Inner City Broadcasting Corp., No. 99 Civ 9579, 2002 WL 995349
    (S.D.N.Y. 2001) ........................................................................................................34

San Leandro Emergency Med. Group Profit Sharing Plan v. Phillip Morris Cos., 75 F.3d 801
    (2d Cir. 1996)............................................................................................................20

Sears, Roebuck and Co. v. Sears Realty Co., 932 F.Supp. 392 (N.D.N.Y. 1996).........34

Shapiro v. Cantor, 123 F.3d 717 (2d Cir. 1997) .....................................................29, 30

Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124 (2d Cir. 1994) ......................... 11, 15-18

Stern v. Leucadia Nat'l Corp., Inc., 844 F.2d 997 (2d Cir. 1988) ................................11

Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc., 552 U.S. ___, No. 06-43 (Jan. 15,
    2008) ..........................................................................................................................30

Suez Equity Investors, LP v. Toronto Dominion Bank, 250 F.3d 87 (2d Cir. 2001) ...................22

Wright v. Ernst & Young LLP, 152 F.3d 169 (2d Cir. 1998)..................................29, 30

Xerion Partners LLC v. Resurgence Asset Mgmt., LLC, 474 F.Supp.2d 505
    (S.D.N.Y. 2007)........................................................................................................18

## State Cases

Oppenheimer & Co. v. Oppenheimer, Appel, Dixon & Co., 86 N.Y.2d 685 (1995) ....................32

Weider v. Chemical Bank, 608 N.Y.S.2d 195 (1st Dept. 1994)......................................................33

## Federal Statutes and Rules

15 U.S.C.A. § 78u-4(b) ...............................................................................................11, 15, 22

15 U.S.C.A. § 77z-2 .................................................................................................................20

15 U.S.C.A. § 78bb(a) .............................................................................................................24

28 U.S.C.A. § 1367(c)(3).........................................................................................................30

Federal Rule of Civil Procedure 9 ................................................................................. passim

Securities and Exchange Act of 1934, § 10(b) .............................................................. passim

## New York Statutes

New York Civil Practice Laws and Rules § 302 ........................................................................26

New York Civil Practice Laws and Rules § 2104 ...............................................................33, 35

Defendants Ray Lyle and Victoria Lyle (the "Lyles") and their children Ginger Bond, Ray Lyle II, and Robert Lyle (the "Lyle Children;" collectively the "Lyle Family") respectfully submit this Memorandum of Law in support of their Motion to Dismiss the Second Amended Complaint (the "Complaint" or "SAC") of Plaintiffs Manchester Inc. ("Manchester"), and Nice Cars Funding LLC, Nice Cars Acceptance Acquisitionco, Inc., and Nice Cars Operations Acquisitionco, Inc. (collectively the "Subsidiaries").

## PRELIMINARY STATEMENT

This is a classic case of buyer's remorse. Stated simply, Manchester purchased a business, Nice Cars, (in an industry in which it had no prior experience), that required large amounts of money to operate (which Manchester didn't have), and which depended upon a robust economy (which began to decline even before the purchase was completed). Not surprisingly, the business is failing and Manchester is looking for someone other than itself to blame -- the Lyles. With nothing more than conclusory supposition (even on their third try, the entire second amended complaint is upon information and belief as to the alleged acts of the Lyles), Manchester cries foul and fraud under the securities laws and common law to try and undo the deal they made. Even assuming, as the Court must for this motion, that the allegations are true, Manchester's claims still fail and should be dismissed.

In sum and substance, Manchester claims that the Lyles' representations concerning the performance of Nice Cars' loans before the sale must have been fraudulent because Nice Cars' loans did not perform nearly as well after the sale. Manchester's disappointment in the performance of the loans is simply not a basis for securities fraud. As demonstrated below, Manchester's securities claims and common law claims fail because:

- Manchester fails to plead fraud with sufficient particularity to satisfy the PSRLA or Rule 9(b). While Manchester broadly alleges that the Lyles manipulated the default rate of Nice Cars' loans to make the company's accounts receivable look

better at the time of the sale, it fails to allege with any specificity whatsoever which loans were manipulated, when they were manipulated, how they were manipulated or why the accounts receivable were fraudulent at the time of the sale.

- Manchester fails to plead scienter with the requisite particularity.  Plaintiffs' conclusory allegations of fraud by hindsight are insufficient as a matter of law.

- The tort claims based on fraud have not been pled with sufficient particularity under Rule 9(b).

- The alleged misrepresentations in the Purchase Agreements are not material. The audited financial statements expressly state that the estimated performance of the loans "should not be regarded as a forecast of future cash collections." At best, the alleged misrepresentations are inactionable forward looking statements given the cautionary language found throughout the financial statements.

- Manchester has not, and cannot, plead loss causation.  Manchester merely states that it paid an inflated price for Nice Cars as a result of the alleged misrepresentations in the Purchase Agreements.  Manchester fails however to plead any causal connection between the alleged misrepresentations and the performance of Nice Cars' loans after the sale.

- Rescission is not a proper remedy for a 10(b)5 claim.

- Because Manchester has not alleged a primary violation of section 10(b)5, it has failed to plead control person liability under section 20(a).

- The Purchase Agreements contain merger clauses which expressly provide that the Agreements contain the entire agreement between the parties, supersede all prior agreements, and embody all representations by the parties.  Thus, any alleged misrepresentations not contained in the Agreements may not form the basis for fraud.

- The Purchase Agreements provide that any breach of the representations in the Agreements must be resolved by an indemnification claim.  Thus, fraud claims based on alleged misrepresentations contained in the Agreements improperly restate the indemnification claim.  The Purchase Agreements further provide that the parties must follow a resolution process established by the Agreements as a condition precedent to asserting a claim, which has not been done.

- The Court also lacks personal jurisdiction over the Lyle Children as personal jurisdiction in this case is based solely upon a New York forum selection clause in the Purchase Agreements.  The Children were not shareholders or officers of Nice Cars and were not parties to the Purchase Agreements.

6270251.1

- The Lyle Children cannot be held liable under the securities laws as there is no aider and abettor or scheme liability in a private securities action for secondary individuals and there are no specific allegations against any of the Children.

- Manchester has not pled the elements of conversion.

- Manchester's request for a declaratory judgment is inappropriate because its other causes of action provide it an adequate remedy.

- Manchester has not pled breach of a settlement agreement because the alleged agreement is not signed and the parties explicitly indicated their intention not to be bound without a signed settlement agreement.

## STATEMENT OF FACTS[1]

### A.    <u>Manchester Seeks to Acquire Nice Cars</u>

Nice Cars was a leading dealer in the buy-here-pay-here used car business.  SAC ¶ 19. The Buy Here-Pay Here business sells cars to customers with bad credit through subprime and lower than subprime loans.  SAC ¶¶ 1, 19, Exhibit A, Note 15.[2]  In 2004, Manchester, having been an oil and gas exploration company, decided to enter the buy-here-pay-here business and in 2005, Manchester identified Nice Cars as a leading dealer in the business and targeted it for acquisition.  After pursuing the Lyles for more than 6 months, in 2006, Manchester began negotiating with the Lyles for the purchase of Nice Cars.  SAC ¶ 19.

---

[1] The statement of facts is taken from the Complaint and the documents incorporated by reference in the Complaint.  These documents are provided in the Declaration of Judith A. Lockhart dated January 18, 2008.  Exhibit A contains the company's audited financial statements for the years 2003, 2004 and 2005 and unaudited statements for the first eight months of 2006 (the "Financial Statements") (SAC ¶¶ 21-24, 38, 39, 49), Exhibit B contains the purchase agreements for the sale of Nice Cars (collectively the "Purchase Agreements") (SAC ¶¶ 40, 41, 43, 45-54), and Exhibit C contains the settlement letter and the draft settlement agreement (SAC ¶¶ 65-69).  Because these documents are incorporated by reference in the Complaint and are integral to Plaintiffs' claims, the Court may consider them without treating this motion as one for summary judgment.  <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 152-53 (2d Cir. 2002).  Exhibit D is Manchester's daily stock chart.  "[A] district court may take judicial notice of well-publicized stock prices without converting the motion to dismiss into a motion for summary judgment." <u>Ganino v. Citizens' Utilities Co.</u>, 228 F.3d 154, 167 n.8 (2d Cir. 2000).

[2] In fact, at the time of the sale, Nice Cars was a creditor in 496 bankruptcies.  Exhibit B, Schedule 3.4(i).

From the beginning of 2006 to October 2006, Manchester performed "thorough due diligence" of Nice Cars, which included the use of its own accountants, Rodefer Moss, to audit the financial statements of Nice Cars. SAC ¶ 1, 2, 21, 38, Exhibit A, Exhibit B at § 3.4(j). According to Manchester, a "key component" of its due diligence was its review of Nice Cars' portfolio of customer loans or accounts receivable. Manchester asserts that its review of the accounts receivable revealed that the Nice Cars' portfolio had increased annually from 2003 through 2005 and that the historical losses during this time (the default rate of the loans) was never higher than 30%. This information was contained in the company's Financial Statements, which were audited by an accountant for Manchester. SAC ¶¶ 2, 22; Exhibit A, Combined Balance Sheet.

Based on this information, Manchester asserts that it believed that Nice Cars' accounts receivable would continue to grow and perform at the same rate after the sale. The continued growth of the loan portfolio was "crucial" to Manchester because it dictated the amount it could borrow from its lender to operate the business. SAC ¶ 2, 22. Manchester now alleges that the information in the Financial Statements was part of a scheme designed to show that the company was worth a premium price. SAC ¶ 23.

The same Financial Statements that recorded the historical losses and bad debt reserves allegedly relied upon by Manchester also contained language cautioning the reader not to rely upon the company's accounts receivable and historical losses as a forecast of future cash collections:

> Management's periodic evaluation of the adequacy of the allowance [for uncollectible contracts] is based on the Company's past loss experience, known and inherent risk, adverse situations that may affect the customer's ability to make payments as agreed, the estimated fair market value of the underlying collateral, and current economic conditions. Exhibit A, Note 2 - Revenue, Costs and Expense Recognition.

The estimated future maturities of contract receivables . . . should not be regarded as a forecast of future cash collections.  Exhibit A, Note 3 (tables omitted).

The Company's customer base is concentrated in the Northwest Georgia and Southeast Tennessee geographical areas.  Due to the nature of the Company's business, many of its customers are considered substandard credit risks.  Exhibit A, Note 15.

The preparation of the combined financial statements . . . requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities, the disclosure of contingent assets and liabilities, and reported revenue and expenses.  Actual results could vary from the estimates that were used.  Exhibit A, Note 2 - Estimates.

The estimated fair value [of contracts receivable] have been determined by using available market information and appropriate data to develop the estimates of fair value, and accordingly, the estimates are not necessarily indicative of the amounts that could be realized in a current market exchange.  The use of different market assumptions or methodologies could have a material effect on the estimated fair value amounts.  Exhibit A, Note 16.

B.    **The Purchase Agreements**

In October 2006, the parties formalized the terms of the sale of Nice Cars in the Purchase Agreements.  SAC ¶¶  1, 22, 36, 40, Exhibit B.[3]  The purchase price was approximately $52 million.   The Lyles received approximately (1) $18 million in cash, (2) $25 million in Manchester stock (6.25 million shares at $4 per share), (3) a $7 million "Purchase Note," and (4) a $2 million "S Tax Reimbursement Note."  SAC ¶ 41, Exhibit B at § 1.[4]  Manchester leveraged

---

[3] Nice Cars was comprised of two companies, Nice Cars Inc. ("NCI") and Nice Cars Capital Acceptance Inc. ("NCA").  The sale of Nice Cars is formalized in two almost identical share purchase and exchange agreements dated October 4, 2006, collectively referred to herein as the "Purchase Agreements."  The sections of the Purchase Agreements referred to in this motion are identical in each of the agreements.

[4] The Manchester stock obtained by the Lyles as part of the purchase price was restricted stock and could not be sold for at least one year after the sale.  Exhibit B at § 3.1(d).  The stock, which had a set purchase price of $4 per share, had risen to $7.52 per share on the day of the sale.  SAC ¶ 43.  The stock's historical prices show that Manchester stock price had risen nearly every day for nine months until it reached $7.52 on the day of the sale, at that time, a record high price.   Ten days after the sale the stock

the value of Nice Cars' loan portfolio at the time of the sale to obtain the monies from its lender to purchase Nice Cars. SAC ¶¶ 22, 42.

The Purchase Agreements contain forty-two representations and warranties by the Lyles. Exhibit B at 3-7, 13-19. Manchester alleges that five of these representations were false and induced Plaintiffs to purchase Nice Cars and that they were "[k]ey to the purchase price negotiation." SAC ¶¶ 46-53, Exhibit A at §§ 3.4(g), (h), (j), (n) and (w). The representations and warranties at issue are:

(1) No Undisclosed Liabilities. The Purchase Agreements contained a representation that Nice Cars had no undisclosed material liabilities that would require public disclosure under the securities laws. SAC ¶¶ 46, 47; Exhibit A at §§ 3.4(g). Manchester alleges that these representations were false because Nice Cars had inadequate bad debt reserves to cover defaults after the sale. SAC ¶¶ 50, 51.

(2) No Undisclosed Events or Circumstances. The Purchase Agreements contained a representation that there were no undisclosed events or circumstances that would require public disclosure under the securities laws. SAC ¶¶ 46, 47; Exhibit A at §§ 3.4(h). Manchester similarly alleges that these representations were false because of the alleged inadequate reserves. SAC ¶¶ 50, 51.

(3) Accounts Receivable. The Purchase Agreements contained a representation that:

> The accounts receivable carried in [Nice Cars'] books and records, including all retail installment sale contracts for vehicles originated by [Nice Cars] (i) are valid; (ii) have arisen solely out of bona fide performance of services and other business transactions in the ordinary course of business consistent with past practice, in each case, with persons other than affiliates; (iii) are not subject to any prior lien

---

Footnote Cont'd

dropped inexplicably to $3 and is now trading around $.40 per share. Exhibit D. Thus, the Lyle's Manchester stock has decreased in value from $25 million at the time of the sale to $2.5 million now.

and are not subject to valid defenses, set-offs or counterclaims, and there are no refunds discounts or other adjustments payable in respect of such accounts receivable; and (iv) are collectable in accordance with their terms, **subject to the historical bad debt expense incurred by Nice Cars.**

SAC ¶¶ 46, 47, Exhibit B at § 3.4(w) (emphasis added). Manchester now claims that that this representation was false because the Lyles somehow "manipulat[ed] the default rate of their customer's loans in order to make the loan portfolio look healthy" before the sale which resulted in the inadequate bad debt reserves. SAC ¶ 2.

(4)    Validity of Financial Statements.   The Purchase Agreements contained a representation that Nice Cars' Financial Statements were true and correct and prepared in accordance with GAAP and fairly presented the financial position of Nice Cars.   SAC ¶¶ 39, 46, 47, Exhibit B at § 3.4(j). Manchester asserts that the Financial Statements, prepared by its own accountants, did not "fairly represent the financial condition and performance of Nice Cars" because they were based on the alleged "manipulated" default rate which resulted in inadequate reserves. SAC ¶ 2, 24, 49.

(5) Absence of Business Changes. The Purchase Agreements contained a representation that Nice Cars had not changed its business practices since December 31, 2005. SAC ¶¶ 46, 47; Exhibit A at § 3.4(n). Manchester alleges that this representation was false because the Lyles secretly changed Nice Cars' customer credit qualification standards and down payment requirements sometime prior to the sale. SAC ¶¶ 25, 52.

C.    **Merger and Indemnification Clauses**

The Purchase Agreements contained merger and indemnification clauses which govern the representations of the parties. The merger clause provided:

This Agreement sets forth the entire agreement and understanding of the parties in respect of the transactions contemplated hereby and supersedes all prior and contemporaneous agreements, arrangements and understandings of the parties

relating to the subject matter hereof. No representation, promise, inducement, waiver or rights, agreement or statement of intention has been made by any of the parties which is not expressly embodied in this Agreement, such other agreements, notes or instruments related to this transaction executed simultaneously herewith, or the written statements, certificates, schedules or other documents delivered pursuant to this Agreement or in connection with the transactions contemplated hereby.

SAC ¶¶ 46, 47, Exhibit B at § 10(d). The indemnification clause provided that the parties shall hold each other harmless

against any and all damages, losses, liabilities, taxes and costs and expenses (including without limitation, attorneys' fees and costs) resulting directly or indirectly from (i) any inaccuracy, misrepresentation, breach of warranty or non-fulfillment of any of the representations and warranties . . . in this Agreement, or any actions, omissions or statements of fact inconsistent with in any material respect any such representation or warranty, (ii) any failure by the Shareholders to perform or comply with any agreement, covenant or obligation in this Agreement.

Exhibit B at § 3.5. The indemnification provision further provided that the liabilities of the parties were subject to certain "conditions." First, a party had to give written notice of a claim within a reasonable period of time. Second, the other party had to object to the claim within 45 days of receipt of the written notice. Finally, the parties had to attempt to settle the claim for a period of 60 days after the receipt of the written objection to the claim. Exhibit B at § 3.5. There is no allegation in the Complaint that this condition precedent was satisfied by Manchester. In fact, it was not.

**D.    The Alleged Additional Misrepresentations by Ray Lyle**

Notwithstanding the merger and integration clauses in the Purchase Agreements, Manchester alleges, solely upon information and belief, that prior to the sale, Mr. Lyle must have omitted a "portion of the write-offs taken with respect to accounts that were not paid off in full -- knowing that omission would be difficult to detect." As a result, Manchester claims that the charge-off percentage represented to Manchester's vendor was grossly understated. SAC ¶ 27.

Manchester further alleges that subsequent to the sale, Mr. Lyle represented to Plaintiffs that "the number of defaults would return to historical level . . . [and] that the increased loan default rate was either consistent with historical levels or was due to a temporary economic down turn and forecast that the default rate would improve." SAC ¶¶ 56, 57. According to Manchester, Plaintiffs relied on this oral representation to borrow additional monies for Nice Cars and to permit the Lyle Defendants to continue to operate Nice Cars. SAC ¶ 57.

E.    **The Draft Settlement Agreement**

On October 2, 2007, Ray Lyle signed a non-binding term sheet concerning a possible settlement with Manchester. SAC ¶ 65, Exhibit C. The term sheet provided:

> [T]his is a nonbinding expression of the intention of the parties with respect to the proposed settlement. The parties intend to enter a binding definitive settlement agreement reflecting the terms in this letter and additional terms.

Exhibit C at 2 (emphasis added). The parties attempted to negotiate but never entered into a binding definitive settlement. SAC ¶¶ 66-68. Moreover, the draft settlement agreement that Manchester now seeks to enforce was never signed and contained language throughout that clearly demonstrated the parties intent not to be bound until the agreement was executed, including:

> Each of the Parties represents and warrants that (a) its signatory to this Agreement has full and legal authority to bind that Party to all terms and conditions of this Agreement;

> Except as otherwise specified herein, the provisions of this Agreement shall remain in full force and effect at all timed after the execution of the Agreement by all Parties; [and]

> Each of the Parties acknowledges that . . . it is signing this Agreement knowingly, voluntarily, and without any coercion or duress; and . . . everything it is receiving for signing this Agreement is described herein, and no other promises or representations have been made to cause it to sign this Agreement.

Exhibit C, Draft Settlement Agreement, ¶¶ 10, 15, 16.  Notwithstanding these facts, Manchester

alleges that the settlement is binding on the Lyle Family because Ray Lyle stated "the terms were

satisfactory to him" at some point in time between the non-binding term sheet and the last

prepared draft of the settlement agreement.  Based on that oral representation, Nice Cars alleges

it borrowed additional monies from it lender.  SAC ¶ 69.

**MOTION TO DISMISS STANDARD**

A complaint may be dismissed under Fed. R. Civ. P. 12(b)(6) if "it appears beyond doubt

that the plaintiff can prove no set of facts in support of his claim which would entitle him to

relief."  Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998) (quoting Conley v. Gibson, 355

U.S. 41, 45-46 (1957)).  "In considering a motion to dismiss for failure to state a claim…a

district court must limit itself to facts stated in the complaint or in documents attached to the

complaint as exhibits or incorporated in the complaint by reference."  Kramer v. Time Warner,

Inc., 937 F.2d 767, 773 (2d Cir. 1991).  The court must accept the factual allegations of the

complaint as true and draw all reasonable inferences in favor of the plaintiff.  Bernheim v. Litt,

79 F.3d 318, 321 (2d Cir. 1996).

**ARGUMENT**

I.    **MANCHESTER FAILS TO PLEAD SECURITIES
      FRAUD WITH SUFFICIENT PARTICULARITY
      (COUNTS 1, 3, 4, 9 AND 10)**

To state a cause of action under § 10(b) and Rule 10b-5, plaintiff must allege that

defendants: (1) in connection with a purchase or sale of securities; (2) with scienter; (3) made a

material false representation or omitted to disclose material information; (4) upon which plaintiff

relied; (5) proximately causing plaintiff to suffer injury. Lentell v. Merrill Lynch & Co., 396

F.3d 161, 172 (2d Cir. 2005).  Securities fraud allegations under § 10(b) must be pled with

particularity under the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)

and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C.A. § 78u-4(b).

Rule 9(b) requires a fraud claim to (1) detail the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York, 375 F.3d 168, 186-87 (2d Cir. 2004); DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987); Novak v. Kasaks, 216 F.3d 300, 306 (2d Cir. 2000).

The PSLRA requires that the claim:

> specify each statement alleged to have been misleading, the reason or reasons why the statement was misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed…[and] state with particularity facts giving a strong inference that the defendant acted with the required state of mind.

15 U.S.C.A. § 78u-4(b)(1)(B), (b)(2) (2007); see Novak, 216 F3d at 307.[5]

## A.   Manchester Fails to Plead the Who, What Where, When, How and Why of Fraud

To plead fraud with particularity, A complaint must allege sufficient facts to show the who, what, where, when, and how of the fraud. Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124,

---

[5] When allegations of fraud are based upon information and belief, the PSLRA requires plaintiffs to "state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Indeed, the Second Circuit has stated that "fraud pleadings generally cannot be based on information and belief." Stern v. Leucadia Nat'l Corp., Inc., 844 F.2d 997, 1003 (2d Cir. 1988). Only those facts "peculiarly within the opposing party's knowledge" may be pled upon information and belief and "must be accompanied by a statement of facts upon which that belief is founded." Id. Here, Plaintiffs state that matters based on personal knowledge are only "with respect to their own acts, and upon information and belief as to all other matters." SAC at pp 1-2. Notwithstanding that fraud is alleged almost entirely on "information and belief," Plaintiffs do not plead any facts upon which the belief is formed as required by the PSLRA. Plaintiffs do not identify any internal documents, reports, witnesses, articles or any other specific basis for their alleged belief. Because the Complaint fails to state with particularity all facts on which Plaintiffs' belief is formed, the fraud claims should be dismissed. See Stern, 844 F.2d at 1003.

1128 (2d Cir. 1994); <u>DiLeo v. Ernst & Young</u>, 901 F.2d 624, 627 (7th Cir. 1990); <u>Highlands Ins.</u>

<u>Co. v. PRG Brokerage, Inc.</u>, No. 01 Civ. 2272, 2004 WL 35439, at *2 (S.D.N.Y. Jan. 6, 2004).

Allegations of fraud must also explain why the statements are fraudulent at the time they are

made. <u>Eternity Global</u>, 375 F.3d 168 at 187; <u>see also</u> <u>ATSI Commc'n, Inc. v. Shaar Fund, Ltd.</u>,

493 F.3d 87, 105 (2d Cir. 2007) (holding Rule 9(b) particularity requirements not met where

"[t]he complaint fail[ed] to sufficiently allege that [the] representation was false when made").

Allegations are insufficient where they do nothing other than identify "the general subject

matter" of the alleged fraud. <u>See</u> <u>Apace Commc'n Ltd. v. Burke</u>, 07-CV-6151, 2007 U.S. Dist.

Lexis 85082, at *17 (W.D.N.Y. Nov. 16, 2007). A plaintiff cannot plead fraud "by simply

providing a method for the defendant to discover the underlying details." <u>See</u> <u>ATSI</u>, 493 F.3d at

106. "If [plaintiff] has access to the details necessary to make these allegations, it must plead

them and not just tell the defendants to go find them." <u>Id.</u>

  1.  <u>**Historical Losses and Bad Debt Reserves**</u>

  Manchester alleges that the representations in the Purchase Agreements, that there were

no undisclosed liabilities or events and that the Financial Statements were accurate,

misrepresented Nice Cars' historical losses, ie. the default rate of past loans, which in turn

caused the company's bad debt reserves to be inadequate after the sale. SAC ¶ 24, 46-54.

However, Manchester does not explain why the historical losses and bad debt reserves, or any

other information in the Financial Statements for that matter, were false at the time of the sale.

Plaintiffs merely claim that pre-sale default rates were better than the post-sale default rates.

SAC ¶¶ 24, 53, 54. Plaintiffs fail to allege why the default rate of past loans as disclosed in the

Financial Statements was different from or how it misrepresented the actual default rate before or

at the time of the sale. The Complaint also fails to provide even one example of a manipulated

loan.  Simply reciting the historical losses of the company as the basis of the fraud, without explaining why they are false, is insufficient to plead fraud with particularity.

This is particularly true in light of the fact that the Financial Statements did <u>not</u> state that the bad debt reserves were sufficient to cover all defaults that may occur after the sale.  Rather, the Financial Statements stated that the bad debt reserves are estimates based upon periodic evaluations of (1) past loss experience, (2) known and inherent risk, (3) adverse situations that may affect the customer's ability to make payments as agreed, (4) the estimated fair market value of the underlying collateral, and (5) current economic conditions.  Exhibit A, Note 2 - Revenue, Costs and Expense Recognition.  Because the allegations do not explain why the historical losses and bad debt reserves were false at the time of the sale, the Complaint's fraud claims based on alleged misrepresentations concerning historical losses and bad debt reserves should be dismissed.

### 2.      Change of Credit Standards

Manchester also alleges that the representation in the Purchase Agreements that Nice Cars had not changed its business practices since December 31, 2005 (SAC ¶¶ 46, 47; Exhibit A at § 3.4(n)) was false because the Lyles secretly lowered Nice Cars' credit standards before the sale.  SAC ¶ 52.  The Plaintiffs fail to allege what credit standards were lowered, when they were lowered, how they were lowered, what individual caused them to be lowered, or identify a single loan affected by the alleged change.  Because such broad allegations are insufficient to plead fraud with particularity, the Complaint's fraud claims based on alleged misrepresentation concerning business changes should be dismissed.

### 3.      Alleged Misrepresentations By Mr. Lyle

The two alleged misrepresentations by Mr. Lyle are equally insufficient to plead fraud with particularity.    First, Manchester speculates that because Mr. Lyle was the person

"principally responsible for maintaining the books and records of the Nice Cars Companies" and "knew that his record keeping methodology was difficult for an outsider, such as Manchester, to penetrate" he must have withheld a portion of the write-offs from an outside vendor of Manchester who was to perform static pool analysis. SAC ¶ 27. Manchester has failed to plead any facts regarding this allegation including the value or scope of the "portion" of the alleged write-offs; when the write-offs were allegedly withheld from the vendor; when, if ever, the write-offs were withheld from Manchester; who the outside vendor was; or how and when the alleged non-disclosure of the write-offs was detected by Manchester. Thus, this claim should be dismissed for lack of particularity.

Second, Manchester alleges that <u>after</u> the acquisition of Nice Cars "the number of defaulting notes in the loan portfolio escalated significantly" and Mr. Lyle "excused the sudden increase in defaults as an aberration and--falsely--represented to Manchester that the number of defaults would return to historical level (sic)...." SAC ¶ 56. Manchester further alleges that Mr. Lyle opined that "the increased loan default rate was either consistent with historical levels or was due to a temporary economic downturn and forecast (sic) that the default rate would improve." SAC ¶ 57. This claim should be dismissed for lack particularity because it does not plead when the alleged representation was made, who it was made to, or why it was allegedly fraudulent.[6]

In sum, Manchester has now had more than a year of owning the company and three attempts to plead its claims, and still has nothing to plead but conclusory allegations and supposition based solely upon information and belief. Manchester has completely failed to

---

[6] This claim should also be dismissed because the alleged representation was not made in connection with the sale of a security and thus cannot form the basis of a 10(b)(5) claim.

allege with any particularity the alleged fraudulent representations by the Lyles, the fraud claims must be dismissed pursuant to Rule 9(b) and the PSLRA. See Apace, 2007 U.S. Dist. Lexis 85082, at *17; Highlands Ins. Co., 2004 WL 35439 at *2-4 (dismissing fraud claim where insurance company alleged broker had provided it with inaccurate loss information to induce insurance company to issue policies because "the complaint was devoid of any specificity regarding the figures that were provided to plaintiff, how these figures differ from the actual correct figures, or at least, the means by which plaintiff discovered that the numbers provided were inaccurate").

**B.    The Complaint Fails to Plead Scienter With Particularity**

Under the PSLRA's heightened pleading standard, a 10(b)5 claim must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C.A. § 78u-4(b)(2). The Second Circuit has held that to adequately plead a fraudulent state of mind or scienter, a complaint must allege (1) facts constituting strong circumstantial evidence of conscious misbehavior or recklessness, or (2) facts showing that defendants had both motive and opportunity to commit fraud. Novak, 216 F.3d at 307. Scienter must be alleged with particular facts showing that defendants (1) benefited in a concrete and personal way from the purported fraud; (2) engaged in deliberately illegal behavior; (3) knew facts or had access to information suggesting that their public statements were not accurate; or (4) failed to check information they had a duty to monitor. Id. at 311.

Several limitations on pleading scienter apply. First, a plaintiff cannot simply allege "fraud by hindsight." Novak, 216 F.3d at 309. "Corporate officials need not be clairvoyant; they are only responsible for revealing those material facts reasonably available to them." Id. (citing Denny v. Barber, 576 F.2d 465, 470 (2d Cir. 1978)); see Shields, 25 F.3d at 1128; DiLeo, 901 F.2d at 627. Thus, allegations that defendants should have anticipated future events and disclosed

certain facts earlier than they did are not sufficient to make out a claim of fraud.  Novak, 216
F.3d at 313 (citing Acito v. IMCERA Group, Inc., 47 F.3d 47, 53 (2d Cir. 1995)).  Second, the
corporation is not required to put forth "an overly gloomy or cautious picture of current
performance and future prospects." Id. (internal citations omitted). "[M]isguided optimism is not
a cause of action, and does not support an inference of fraud." Shields, 25 F.3d at 1129 (citing
Denny v. Barber, 576 F.2d 465, 470 (2d Cir. 1978)).

        In DiLeo v. Ernst & Young, plaintiffs argued that defendants committed fraud by
certifying financial statements even though it knew that a substantial amount of risky loans were
likely to be uncollectible and failing to increase the companies' reserves to protect against
defaults.  DiLeo, 901 F.2d at 626.  The loans were later written off in subsequent financial
statements as uncollectible, and plaintiff sued.  Id. at 626-27.  The Seventh Circuit affirmed the
dismissal of the complaint on the ground that the plaintiff had not pled scienter.  The Court stated
that "you cannot tell from reading [the complaint] why failure to increase the reserves amounted
to fraud."  Id.   The complaint did not give any "examples of problem loans that [defendant]
should have caught, or explain how it did or should have recognized that the provisions for
reserves . . . were inaccurate."  Id. at 626. The Court explained that

> [f]or any bad loan the time comes when the debtor's failure is so plain that the
> loan is written down or written off.  No matter when a bank does this, someone
> may say that it should have acted sooner.  If all that is involved is a dispute about
> the timing of the writeoff, based on estimates of the probability that a particular
> debtor will pay, we do not have fraud; we may not even have negligence.

Id. at 626-27.  Because the complaint merely compared the company's accounts receivable at
two different times, without pointing to some fact showing the difference was attributable to
fraud, it offered nothing but "fraud by hindsight."  Id.

In <u>Shields</u>, the defendant had stated that its loan portfolio "was 'extremely healthy, as evidenced by net charge-offs of approximately ¼ of 1 percent of loans over the past four years,' a rate 'well below the average for our industry,'" and that its reserves were "adequate to provide for the current loss exposure and the potential for further decline in value." <u>Shields</u>, 25 F.3d at 1126-27.  Plaintiff sued for fraud when the defendant later took losses for bad loans and inadequate reserves.  The Court dismissed the complaint for failing to plead scienter, finding that the Plaintiffs did not

> allege facts that would give rise to a strong inference that defendants knew or recklessly disregarded the fact that that the loan loss reserve was inadequate, or that continuing erosion of the real estate market would render the loan portfolio precarious, or that the outlook was poor.   [Plaintiffs'] frequent conclusory allegations – that Defendants "knew but concealed" some things, or "knew or were reckless in not knowing" other things do not satisfy rule 9(b).  We have held in the context of securities fraud claims that such allegations are "so broad and conclusory as to be meaningless."
>
> *     *     *
>
> [Plaintiffs'] record[] statements by defendants predicting a prosperous future and holds them up against the backdrop of what actually transpired....This technique is sufficient to allege that the defendants were wrong; but misguided optimism is not a cause of action, and does not support an inference of fraud.  <u>We have rejected the legitimacy of alleging fraud by hindsight.</u>

<u>Id.</u>  at 1129 (citing <u>Denny v. Barber</u>, 576 F.2d at 470 (emphasis added)).

Manchester cannot, with the benefit of hindsight, plead fraud on conclusory allegations that the Lyles knew or should have known that the reserves were inadequate to cover future defaults.  <u>See Shields</u>, 25 F.3d at 1129.  The current Complaint, like the complaints in <u>DiLeo</u> and <u>Shields</u>, fails to point to anything that suggests that the Lyles knew or should have known that Nice Cars reserves were inadequate, or that the economy would weaken and the credit market would tighten, or that the price of gas would rise, or anything else that would suggest the outlook of the performance of Nice Cars' loans was poor.  Instead, Plaintiffs merely allege repeatedly

and in highly conclusory fashion that the representations in the Purchase Agreements were made with the knowledge that they were false and misleading.  See, e.g., SAC ¶ 48, 77, 83.  Such allegations are so broad and conclusory as to be meaningless.  See Shields, 25 F.3d at 1129; DiLeo, 901 F.2d at 626-27.[7]  Because the Complaint merely compares Nice Cars' accounts receivable before the sale with its accounts receivable a year later, without pointing to some fact showing the difference was attributable to the Lyle's alleged fraud, it improperly pleads "fraud by hindsight."  Thus, the fraud claims should be dismissed.  See Shields, 25 F.3d at 1129; DiLeo, 901 F.2d at 626-27.

## C.    The Claims For Partial Rescission, Replevin, Constructive Trust, And Breach Of Fiduciary Duty Must Be Dismissed Because They Are Not Pled With Particularity

It is well settled that the particularity requirements of Rule 9(b) extend beyond those claims labeled by plaintiffs as "fraud" to all claims in a pleading that are "based on…allegations of fraud."  See Apace, 2007 U.S. Dist. Lexis 85082, at *10.  For each cause of action based on fraud allegations, the

> plaintiffs must not only plead the elements of the relevant claim under New York law, but they must also meet the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which provides that….in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.

---

[7] The Second Circuit has recognized that general allegations of economic self-interest and other motives are insufficient to plead scienter for securities fraud.  Kalnit v. Eichler, 264 F.3d 131, 139 (2d Cir. 2001) (finding allegation that officers' and directors' motives in committing fraud was to avoid personal liability on contract was conclusory and did not satisfy scienter pleading requirements); Xerion Partners LLC v. Resurgence Asset Mgmt., LLC, 474 F.Supp.2d 505, 519 (S.D.N.Y. 2007) ("[Plaintiff] also alleges that the Individual Defendants wished to conceal prior illegal activity.  These allegations are pled on information and belief only, without any particularized facts, and thus fail to state a claim for securities fraud.").  Here, Manchester alleges that the Lyle Defendants' motive for defrauding Plaintiffs was to pay a tax liability owed by Nice Cars to the IRS and avoid potential criminal liability.  SAC ¶ 28.  In short, these conclusory allegations -- which are pled entirely on information and belief -- do not satisfy Plaintiffs' burden to plead scienter with particularity.  The Lyle's alleged obligation to pay the company's tax liability arose because of the company's status as an S corporation and was fully disclosed to Manchester prior to the sale.  Manchester does not allege one single fact that would support its outrageous allegation that there was a potential for criminal liability.

Id. (dismissing breach of fiduciary duty claims "for failure to meet the pleading requirements of Rule 9(b)"); Am. Mobile Commc'n., Inc. v. Nationwide Cellular Serv., Inc., No. 91 Civ. 3587, 1992 WL 232058, at *6 (S.D.N.Y. Sept. 3, 1992) (dismissing breach of fiduciary claim that was "subject to the particularity requirements of Rule 9(b) because it relies heavily on allegations of fraudulent conduct").

Manchester's claims for Rescission, Replevin, and Constructive Trust, while somewhat incomprehensible, appear to be based on the alleged misrepresentations concerning the historical losses and bad debt reserves of the company and therefore must be dismissed because, as explained above, such fraud has not been pled with particularity. Manchester's claim of breach of fiduciary duty is based on allegations that the "Lyle Defendants submitted or caused to be submitted insurance claims for losses where no loss had occurred," and thus they committed "insurance fraud." SAC ¶ 123. Manchester has again failed to link any individual defendant to any allegedly fraudulent act and have also failed to identify when and where the allegedly fraudulent acts took place, what insurance policy or policies were involved in the purported fraud, how much money was involved in the alleged fraud, and how the alleged fraud was discovered. SAC ¶¶ 119-126. Manchester's bald accusations of fraud, without any detail of who, when, where, why and how the fraud was carried out, cannot support a claim for insurance fraud or breach of fiduciary duty based on insurance fraud. Thus, Manchester's claim for breach of fiduciary duty must be dismissed.

## II.    MANCHESTER FAILS TO PLEAD ADDITIONAL ELEMENTS OF SECURITIES FRAUD (COUNTS 1 AND 3)

### A.    Manchester Has Not Alleged Material Misrepresentations And Omissions

A fact is material when there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." Basic Inc. v. Levinson, 485 U.S. 224, 231-32 (1988). "[F]orward-looking statements" that "reflect hope, adequately tinged with caution," when considered in the context of "the total mix of information available to the market," are not misleading under the "bespeaks caution" doctrine. San Leandro Emergency Med. Group Profit Sharing Plan v. Phillip Morris Cos., 75 F.3d 801, 811 (2d Cir. 1996); see also 15 U.S.C.A. §§ 77z-2(a) & (c)(1) (2007). The bespeaks caution doctrine allows courts to rule that a defendant's forward looking representations contain enough cautionary language that no reasonable investor could be misled about the nature of the risk when he invested. In re Prudential Securities Inc. Ltd. P'ships Litig., 930 F. Supp. 68, 71-72 (S.D.N.Y. 1996); Halperin v. EBanker USA.Com, Inc., 295 F.3d 352, 358 (2d Cir. 2002); Luce v. Edelstein, 802 F.2d 49, 56 (2d Cir. 1986); Rombach v. Chang, 355 F.3d 164, 173 (2d Cir. 2004). An "offeror is not liable for securities fraud simply because the investment did not turn out as the investor hoped." Halperin, 295 F.3d at 361.

Here, Manchester was well aware of the inherent risks of default of Nice Car's subprime loans before and after the sale. First, prior to the sale, Manchester spent two and half years trying to enter the Buy Here-Pay Here used car business. SAC ¶ 19. Thus, it became fully aware of the vast information available to the market concerning the high risk involved in selling used cars to people with substandard credit through subprime car loans. Manchester spent an additional nine months performing due diligence on Nice Cars during which its accountants

audited the company's financial statements.  SAC ¶¶ 1, 2, 21 and 38.  The Financial Statements

expressly stated that the company's default rates were nothing more than estimates and should

not be seen as projections for future performance.  Specifically, the Financial Statements stated

that "contracts receivable are reported at their outstanding principal balances, net of amounts

*estimated* to be uncollectible…" Exhibit A, Note 2 (emphasis added).[8]  They further advised that

bad debt reserves are periodically evaluated by management "based upon [Nice Car's] past loss

experience, known and inherent risk, adverse situations that may affect the customer's ability to

make payments as agreed, the estimated fair market value of the underlying collateral, and

current economic conditions." Exhibit A, Note 2.  They also noted that estimated receivables

"should not be regarded as a forecast of future cash collections."  Exhibit A, Note 3.  Finally, the

Financial Statements warned that due to the nature of the Company's business, many of its

customers are considered substandard credit risks.  Exhibit A, Note 15.

A reasonable investor -- particularly a sophisticated investor such as Manchester -- would

have been cautioned by the language in the Financial Statements of the inherent risks associated

with the collection of Nice Cars accounts receivable.  See, e.g., Rombach, 355 F.3d at 176

(dismissing securities fraud claims against individual defendants even though "some of [the]

cautionary statements were formulaic" because "as a whole they provided a sobering picture of

[the company's] financial condition and future plans").

---

[8] And, more generally, Note 2 of the Financial Statements warns that

The preparation of the combined financial statements in conformity with accounting
principles generally accepted in the United State of America requires management to
*make estimates and assumptions* that affect the reported amounts of assets and liabilities,
the disclosure of contingent assets and liabilities, and the reported revenues and expenses.
*Actual results could vary from the estimates that were used.*  (Emphasis added).

B.    **Manchester Has Not Pled Loss Causation**

It is not adequate for a plaintiff merely to allege that the price paid for a security was inflated as a result of defendant's alleged misrepresentations. Dura Pharm, Inc. v. Broudo, 544 U.S. 336, 342 (2005); Lentell, 396 F.3d at 175. Private securities fraud actions do not "provide investors with broad insurance against market losses, but [rather] protect them against those economic losses that misrepresentations actually cause." Id. Thus, in order to state a fraud claim, a plaintiff must plead a causal link between the alleged conduct and the alleged economic harm. Lentell, 396 F.3d at 172-73; 15 U.S.C.A. § 78u-4(b)(4) (2007).[9] To adequately plead loss causation, plaintiff must allege losses were (1) a "foreseeable consequence" of defendants' alleged misrepresentations or omissions, and (2) caused by the "materialization of the concealed risk." Id.; see also Suez Equity Investors, LP v. Toronto Dominion Bank, 250 F.3d 87, 95 (2d Cir. 2001). Loss causation cannot be established where an intervening event unrelated to the fraud causes plaintiff's loss. Emergent Capital Inv. Management, LLC v. Stonepath Group, Inc., 343 F.3d 189, 197 (2d Cir. 2003).

In Lentell, plaintiff sued Merrill Lynch for recommending it "buy" and "accumulate" risky internet stock when it believed that the stocks were not good buys. Lentell, 396 F.3d at 165-67. After plaintiff purchased the stock, the internet bubble burst and the stock price fell in value. Id. at 167. The Second Circuit held that loss causation was not properly pled because the risk of the fall in stock price was not concealed by Merrill Lynch's allegedly insincere reports to

---

[9] The PSLRA provides:

> [in] any private action arising under this chapter, the plaintiff shall have the burden of proving the act or omission of the defendant alleged to violate this chapter caused the loss for which plaintiff seeks to recover damages.

15 U.S.C. § 78u-4(b)(4)(1997).

buy the stock.  Id. at 176.  In fact, Merrill Lynch's reports, even though they recommended investors buy the stock, suggested that such an investment was volatile.  Id.  The Court explained:

> [W]here (as here) substantial indicia of the risk that materialized are unambiguously apparent on the face of the disclosures alleged to conceal the very same risk, a plaintiff must allege (i) facts sufficient to support an inference that it was defendant's fraud -- rather than other salient factors -- that proximately caused plaintiff's loss; or (ii) facts sufficient to apportion the losses between the disclosed and concealed portions of the risk that ultimately destroyed an investment.  Plaintiffs have done neither, and thus offer no factual basis to support the allegation that Merrill's misrepresentations and omissions caused the losses.

Id. at 177.

Here, Manchester alleges that (1) the Lyles provided financial information to Manchester to show the company was worth a "premium price," (2) the representations in the Purchase Agreements were "[k]ey to the purchase price negotiation," and (3) Plaintiffs paid an inflated purchase price for Nice Cars. SAC ¶¶ 23, 48, 71.  First, Allegations of payment of an inflated price are insufficient to plead loss causation.  See Lentell, 396 F.3d at 175.  Second, the increase in defaults is not a foreseeable consequence of the alleged misrepresentations concerning historical losses and bad debt reserves.  Even if true, such representations do not conceal the inherent risk of default of subprime loans in the Buy Here-Pay Here used car business.  This is particularly true given the cautionary language contained throughout the Financial Statements. See Lentell, 396 F.3d at 175.  Moreover, there was no "materialization" of a concealed risk of default, or any other information in the Financial Statements, that occurred after the sale that resulted in increased defaults.

The increased default rate after the sale can be attributable to many causes such as the down turn in the economy, the collapse of the subprime market, the increase in gas prices, and the fact that Nice Cars had no operating cash to run the business.  Manchester fails to allege any

facts sufficient to support an inference that it was the Lyles' alleged fraud -- rather than these other factors -- that proximately caused Manchester's loss; nor does it even allege facts sufficient to apportion the losses between the disclosed and allegedly concealed portions of the risk of increased defaults.  For these reasons, Manchester has failed to plead loss causation.  See Dura Pharm, 544 U.S. at 346; Lentell, 396 F.3d at 177.

**C.    Rescission Is Not A Proper Remedy For Securities Fraud**

Section 28 of the Securities Exchange Act of 1934 is the applicable provision on damages and remedies for a Rule 10b-5 cause of action.[10]   Affiliated Ute Citizens of Utah v. U.S., 406 U.S. 128 (1972).  Section 28 provides that

> [N]o person permitted to maintain a suit for damages under the provisions of this chapter shall recover, through satisfaction of judgment in one or more actions, a total amount in excess of his actual damages on account of the act complained of
> . . . .

15 U.S.C.A. § 78bb(a) (2007); see Rolf v. Blyth, Eastman Dillon & Co., Inc, 570 F.2d 38, 49-50 (2d Cir. 1978). Rescission is an inappropriate remedy in almost all actions because it awards a successful plaintiff more than its "actual damages."  The preferred measure of damages is "out of pocket" damages, i.e. "the excess of what he paid over the value of what he got."  Gurary v. Winehouse, 235 F.3d 792, 799 (2d Cir. 2000) (quoting McMahan & Co. v. Wherehouse Entm't, Inc., 65 F.3d 1044, 1049 (2d. Cir 1995)); see also Hoxworth v. Binder, Robinson & Co. Inc, 903 F.2d 186, 203 n.25 (3d. Cir 1990) (expressing "clear disapproval of a damage theory that would insure defrauded buyers against downside market risk unrelated to the fraud.").   Here, Manchester has not shown it has been damaged at all, yet they ask the Court to unwind the parties' business transaction, completely returning to Manchester the full purchase price, including any shares the Lyles have of Manchester.  Because this remedy has no relation

---

[10] Neither § 10(b) nor Rule 10b-5 contains an express provision for damages.

whatsoever to any actual damages that Manchester may have, its claim for rescission should be dismissed.

**D.    The Complaint Fails to Plead A Claim Under Section 20(a)**

In order to prove a claim under section 20(a), "a plaintiff must show (1) a primary violation by a controlled person; (2) control of the primary violator by the defendant; and (3) that the controlling person was in some meaningful sense a culpable participant in the primary violation." Boguslavsky v. Kaplan, 159 F.3d 715, 720 (2d Cir. 1998); Rombach, 355 F.3d at 177-78.  Control means the power to direct the management or policies of a person. Because Manchester has failed to state a 10(b)5 claim, they have failed to allege a primary violation of the securities laws.  See id. at 177-78.  Moreover, the Complaint makes no mention of the Defendants' control over a primary violator and a culpable participant in a primary violation. Manchester therefore fails to state a claim of control person liability under section 20(a).

### III.    MANCHESTER'S FRAUD CLAIMS ARE BARRED BY THE MERGER CLAUSES IN THE PURCHASE AGREEMENTS AND SHOULD BE DISMISSED FOR RESTATING ITS INDEMNIFICATION CLAIM (COUNTS 1 AND 2)

Even if the Court were to determine that Manchester has alleged fraud with particularity, Manchester's fraud claims should still be dismissed because they are barred by the merger clause in the Purchase Agreements and are duplicative of Manchester's Indemnification Claim.  SAC ¶¶ 97-101.  To maintain a claim of fraud in connection with the non-performance of a contract, a plaintiff must: (1) demonstrate a legal duty separate from the duty to perform under the contract; (2) demonstrate a fraudulent misrepresentation collateral to the contract; or (3) seek special damages caused by the misrepresentation that are not recoverable as contract damages. Bridgestone/Firestone, Inc. v. Recovery Credit Serv., Inc., 98 F.3d 13, 20 (2d Cir 1996); see also Osan Ltd v. Accenture LLP, 454 F. Supp.2d 46,, 52 (E.D.N.Y. 2006).  Where the alleged

misrepresentations pertain to the subject matter of the agreement and the agreement contains a merger clause, however, the misrepresentation will not give rise to a separate fraud claim because in such circumstances there is no representation that is collateral to the agreement. Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc., 343 F.3d 189, 193 (2d Cir. 2003); Bates Advertising USA, Inc. v. McGregor, 282 F. Supp.2d 209, 220-21 (S.D.N.Y. 2003); see also Dyncorp v. GTE Corp., 215 F. Supp.2d 308, 324-25 (S.D.N.Y. 2002); Osan, 454 F. Supp.2d at 55 n.9.

In Emergent, the plaintiff alleged that during negotiations leading up to its investment in the preferred stock of defendant, defendant's officers misrepresented the size of the company's largest asset, its investment in another company.  The stock purchase agreement had a standard, general merger clause, stating that the agreement together with the accompanying documents "'contain[ed] the entire understanding and agreement among the parties . . . and superseded any prior understandings or agreements between or among them.'" Emergent, 343 F.3d at 193.  The Second Circuit held that in light of the defendants' extensive contractual representations about other matters, the plaintiff's sophistication, and the size of the transaction, plaintiff's failure to protect itself by insisting that the alleged misrepresentation be included in the stock purchase agreement, precluded a finding that plaintiff reasonably relied upon the misrepresentation as to that investment. Id. at 196.

Here, the merger and indemnification provisions make clear that the parties relied only on the representations in the Purchase Agreements and that any breach of those representations would be resolved though an indemnification claim.  Indeed, Manchester has represented that it relied only on the representations and warranties in the Agreements.  Exhibit B at § 10(d).  The Lyles made forty-two representations in the Agreements.  Manchester is a sophisticated investor.

Thus, Manchester cannot allege fraud claims on any representation or information provided to Manchester that is not set forth in the Agreements. Such claims are barred by the merger clause and should be dismissed. See id.; Dyncorp, 215 F. Supp.2d at 324.

With respect to the representations contained in the Purchase Agreements, those claims are expressly limited to indemnification claims as provided for in the Agreements. Exhibit B, § 3.5. In the indemnification claim, Manchester alleges that "[t]he Shareholders breached the representations and other terms" of the Purchase Agreements. SAC ¶ 98. Manchester's fraud claims based on representations in the Agreements should therefore be dismissed as duplicative of the indemnification claim. See Ritchie Cap. Mgmt., L.L.C. v. Coventry First LLC, No. 07 CIV 3494, 2007 WL 2044656, at *7 (S.D.N.Y. July 17, 2007) (dismissing fraud claim without leave to replead) (quoting Telecom Int'l Am., Ltd. v. AT&T Corp., 280 F.3d 175, 196 (2d Cir. 2001)).[11]

### IV.    THE LYLE CHILDREN SHOULD BE DISMISSED (ALL COUNTS)

### A.    The Court Lacks Personal Jurisdiction Over The Lyle Children

Federal courts determine personal jurisdiction by looking to the law of the state in which they sit. Madison Models, Inc. v. Casta, 01 Civ. 9323, 2003 WL 21978628, at * 2 (S.D.N.Y. Aug. 20, 2003) (Swain, J.); Pilates, Inc. v. Pilates Inst., Inc., 891 F. Supp. 175, 179 (S.D.N.Y. 1995). On a motion to dismiss, the plaintiff must "make out a *prima facie* case of personal jurisdiction." Herbstein v. Cruetman, 768 F. Supp. 79, 81 (S.D.N.Y. 1991). Under New York's long arm statute, a non-domiciliary will be subject to personal jurisdiction if they (1) transact business in New York, (2) commit a tort in New York, (3) commit a tort outside New York "causing injury to person or property within the state...." or (4) own real property in New York.

---

[11] The indemnification claim fails in any event for the reasons set forth in section VI.B supra.

N.Y. C.P.L.R. § 302 (2007); see Daly v. Castro Lines, 30 F. Supp.2d 407, 411-12 (S.D.N.Y. 1998).

Here, Manchester concedes that the Llye Children live and work in the State of Georgia and are not domiciled in New York. SAC ¶¶15-17. Manchester, however, fails to make a *prima facie* showing of jurisdiction under New York's long-arm statute. In fact, there is not a single allegation in the Complaint that links any of the Lyle Children to New York on the claims at issue. Notably, the Complaint does <u>not</u> allege that any of the children have ever been in New York, or have ever transacted business in New York, or have ever caused injuries to Manchester in New York. This is because the Lyle Children have no contacts with New York. See Affidavits of Ginger Bond, Raymond Lyle, II and Robert Lyle date January 15, 2008. Because there is absolutely no basis to exercise personal jurisdiction over the Lyle Children, they should be dismissed from this case. See Lehigh Valley, Indus., Inc. v. Birenbaum, 527 F.2d 87, 95 (2d Cir. 1975) (affirming dismissal of claims against individual defendant because plaintiffs "failed to establish that [he] transacted business in New York or committed a tortious act in or outside the state").

**B.      The Complaint Fails to Plead Particularity As To The Lyle Children**

The Second Circuit has made clear that "Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants'." Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993). "Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." DiVittorio, 822 F.2d at 1247. Simply put, Rule 9(b) does not allow a complaint to lump multiple defendants together but requires plaintiffs to differentiate their allegations with respect to each defendant. Apace, 2007 U.S. Dist. Lexis 85082, at *17; see also, Mills, 12 F.3d at 1175 (dismissing securities fraud claim "because even though these plaintiffs

have served an original and two amended complaints, they still have not linked the alleged fraudulent statements to particular [defendants].").

Here, the Complaint is silent as to what, if any, role the Lyle Children played in the alleged fraud.  There is not a single allegation in the Complaint that the Lyle Children ever participated in *any* communications—fraudulent or otherwise—with the Plaintiffs and the Complaint certainly does not allege the time, place, speaker, or content of any such communications as required by Rule 9(b).  By lumping all of the Defendants together in undifferentiated allegations and referring to them throughout the Complaint as the "Lyle Defendants" (SAC ¶¶  2-4, 20-22, 24-25), Manchester has violated the basic requirement under Rule 9(b) that fraud be pled with particularity as to <u>each</u> defendant.  It is clear that the Lyle Children were brought into this case solely to punch the Lyles.  The fraud claims should be dismissed with respect to the Lyle Children.  <u>See</u>  <u>Mills</u>, 12 F.3d at 1175.

## C.    <u>Manchester's Claim of Aiding and Abetting Is Unavailing</u>

The Supreme Court has held that civil liability under § 10(b) must be premised on a primary violation of § 10(b) and Rule 10b-5.  It cannot be based on the mere aiding and abetting of another person's fraud.  <u>Central Bank of Denver N.A. v. First Interstate Bank of Denver, N.A.</u> 511 U.S. 164, 177 (1994); <u>see</u> <u>also</u> <u>In re Charter Litig. Comm. Inc. Securities Litig.</u>, 443 F.3d 987, 991-92 (8th Cir. 2006); <u>Shapiro v. Cantor</u>, 123 F.3d 717 (2d Cir. 1997); <u>Wright v. Ernst & Young LLP</u>, 152 F.3d 169 (2d Cir. 1998).  Section 10(b) does not allow private rights of action for conduct which has "the purpose and effect of creating a false appearance of material fact to

further a scheme." <u>Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.,</u> 552 U.S. ___, No. 06-43, slip op. at 9 (Jan. 15, 2008).[12]

In <u>Shapiro</u>, the Second Circuit held that allegations that fall short of an actual false or misleading statement or omission by a person cannot survive <u>Central Bank</u>. <u>Id.</u> at 720. In <u>Wright</u>, the Second Circuit followed the "bright line" test established in <u>Shapiro</u> and concluded that "a defendant must actually make a false or misleading statement in order to be held liable under Section 10(b)." <u>Id.</u> at 175 (quoting <u>Shapiro</u>, 123 F.3d at 720). Here, as in <u>Shapiro</u> and <u>Wright</u>, Manchester fails to allege that any of the Lyle Children made any false or misleading statements to the Plaintiffs. <u>See</u> SAC ¶¶ 2-4, 20-22, 24-25. This plainly fails the test set out in <u>Central Bank</u>, <u>Shapiro</u>, and <u>Wright</u>. In fact, the Complaint contains no specific allegations with respect to any of the Lyle Children - fraudulent or otherwise. Because at most, Manchester pleads an aiding and abetting theory of liability with respect to the Lyle Children, and there is no private right of action under § 10(b) based on aiding and abetting, the fraud claims against the Lyle Children should be dismissed.

## V. THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER MANCHESTER'S REMAINING STATE LAW CLAIMS (COUNTS 2-7 AND 9-12)

A district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C.A. § 1367(c)(3) (2007); <u>Pitchell v. Callan</u>, 13 F.3d 545, 549 (2d Cir. 1994); <u>Living Music Records, Inc. v. Moss Music Group, Inc.</u>, 827 F. Supp. 974, 985 (S.D.N.Y. 1993); <u>Manela v. Gottlieb</u>, 784 F. Supp. 84, 88

---

[12] In <u>Stoneridge</u>, the plaintiffs alleged that respondents "knew or were in reckless disregard of [the issuer's] intention to use [ ] transactions to inflate its revenues and knew the resulting financial statements issued by [the issuer] would be relied upon by research analysts and investors." 552 U.S. ___, slip op. at 4. The Supreme Court held that respondents could not be found liable under § 10(b) because the plaintiff failed to allege an act or statement upon which the plaintiffs relied. 552 U.S. at ___, slip op. at 7.

(S.D.N.Y. 1992).    If the federal claim is dismissed early in the action, before substantial preparation has gone into the claims, then dismissal is generally warranted.  See, e.g., Manela, 784 F. Supp. at 88 (declining to exercise supplemental jurisdiction over remaining state law claims of fraud, breach of fiduciary duty and breach of contract where dismissal of claims alleging securities fraud violations occurred at motion to dismiss stage).

Here, the Court's original jurisdiction is based upon Manchester's federal securities fraud claims. SAC ¶¶ 6, 7.  If the Court dismisses the federal securities claims on one of the grounds set forth above, the Court should not exercise supplemental jurisdiction over Manchester's remaining state law claims because dismissal occurred early in this action before the parties and the Court have put substantial effort into litigating the claims.  Manela, 784 F. Supp. at 88; see also Ciro, Inc. v. Gold, 816 F. Supp. 253, 270-72 (D.Del. 1993) (refusing to exercise supplemental jurisdiction over claims of breach of fiduciary duty after dismissing federal securities claims).

### VI. MANCHESTER'S STATE LAW CLAIMS ARE UNAVAILING (COUNTS 2, 3, 5, 6, 11 AND 12)

To the extent the Court exercises supplemental jurisdiction over Manchester's state law claims or declines to dismiss its securities fraud claims, the state law claims should also be dismissed.

### A.    Manchester Fails to State a Claim for Common Law Fraud

Under New York common law, a plaintiff states a cause of action for fraud if he pleads 1) a false representation or omission of material fact, 2) made by defendant with scienter, which 3) was reasonably relied upon by plaintiff to 4) plaintiff's detriment.  Chase v. Columbia Nat'l Corp., 832 F.Supp. 654, 660 (S.D.N.Y. 1993) (citing Channel Master Corp. v. Aluminum Ltd. Sales Inc., 4 N.Y.2d 403, 406-07 (1958).  The pleading requirements of common law fraud are

essentially the same as those for claims under Rule 10b-5. <u>Joffee v. Lehman Bros., Inc.</u>, No. 04 Civ. 3507, 2005 WL 1492101, at *14 (S.D.N.Y. June 23, 2005).    As explained above, Manchester has failed to plead fraud with particularity, scienter, materiality and loss causation. The fraud claims are also barred by the merger clause and redundant of Manchester's contract claims.  Thus, Manchester's common law fraud claims should be dismissed.

**B.**    **Manchester Fails to State a Claim For Indemnification**

A condition precedent is an act or event, other than a lapse of time, which, unless the condition is excused, must occur before an obligation or liability arises under an agreement. <u>Oppenheimer & Co. v. Oppenheimer, Appel, Dixon & Co.</u>, 86 N.Y.2d 685, 690 (1995); <u>120 Greenwich Dev. Ass'n, LLC v. Reliance Ins. Co.</u>, No. 01 Civ. 8219, 2004 WL 1277998, at *11 (S.D.N.Y. June 8, 2004).

Here, Manchester alleges that the Lyles breached the Purchase Agreements because the representations in the Agreements were false when made and thus, it is entitled to indemnification under § 3.5 of the Agreements.  SAC ¶¶ 97-101.  The Purchase Agreements, however, provide that the liabilities of the parties are subject to certain "conditions,"  including written notice of a claim within a reasonable period of time, objection to the claim in writing within 45 days of notice, and settlement discussions between the parties for a period of 60 days after the receipt of the written objection.  Exhibit B at § 3.5.  This language creates unambiguous preconditions for triggering liability under the indemnification clause.  <u>See</u> <u>120 Greenwich</u>, 2004 WL 1277998 at *11.  Manchester fails to state a claim for indemnification because the Complaint fails to allege that Plaintiffs engaged in settlement discussions with the Lyles for a period of 60 days following the Lyle's written objection to the notice of claim.  By failing to engage in settlement discussions for a 60-day period, Manchester failed to satisfy a condition precedent to the Lyle's liability under the indemnification clause.

**C.    Manchester Fails to State a Claim for Conversion**

Under New York law, the "tort of conversion is established when one who owns and has a right to possession of personal property proves that the property is in the unauthorized possession of another who has acted to exclude the rights of the owner." Rella v. N. Atl. Marine, Ltd., No. 02 Civ. 8573, 2004 WL 1418021, at *5 (S.D.N.Y. June 23, 2004). To properly plead a cause of action for conversion, it is incumbent upon plaintiff to allege facts establishing that he owned or had a superior right to the materials in question, that he demanded their return, and that defendant refused to deliver them. See Weider v. Chemical Bank, 608 N.Y.S.2d 195 (1st Dep't 1994).

Manchester alleges that the Lyles converted Nice Cars' property by allegedly receiving kick backs from vendors, stripping cars of parts and selling them on the black market, and selling cars for their own personal profit. SAC ¶¶ 4, 58, 59. Manchester has failed to state a claim for conversion as it has failed to plead that they had actual ownership of the property allegedly converted, or that unauthorized possession of the property excluded their rights as owner, or that they demanded the property be returned, or that the Lyles refused to return the property.

**D.    Manchester Fails to State a Claim For a Declaratory Judgment**

Under New York law, "'a cause of action for a declaratory judgment is unnecessary and inappropriate when the plaintiff has an adequate, alternative remedy in another form of action such as a breach of contract.'" See Gross v. Empire Health Choice Assurance, Inc., 2007 WL 2066390 (N.Y. Sup Ct., N.Y. County 2007) (quoting Apple Records, Inc. v. Capitol Records, Inc., 137 A.D.2d 50, 54 (1st Dept. 1988)). Here, Manchester's action for declaratory judgment is unnecessary given it has an adequate remedy in the other causes of action in the Complaint.

**E.**    **Manchester Fails to State A Claim For Breach of a Settlement Agreement**

N.Y. C.P.L.R. § 2104 provides:

An agreement between parties or their attorneys relating to any matter in an action, other than one made between counsel in open court, is not binding upon a party unless it is in writing subscribed by him or his attorney or reduced to the form of an order and entered.

Thus, under New York law, a settlement agreement may not be enforced unless it is memorialized in a signed writing or made in open Court. See Rosenberg v. Inner City Broadcasting Corp., No. 99 Civ. 9579, 2001 WL 995349, at * 2 (S.D.N.Y. 2001); Sears, Roebuck and Co. v. Sears Realty Co., 932 F.Supp. 392, 405-06 (N.D.N.Y. 1996). Because Manchester concedes that the draft settlement agreement was not signed by the parties, it fails to state a claim for breach of a settlement agreement.[13]

Manchester also fails to state a claim under common law contract principles, which provide that if parties intend <u>not</u> to be bound absent a signed agreement, the parties will not be bound until then. Ciaramella v. Reader's Digest Ass'n, Inc., 131 F.3d 320, 322 (2d Cir. 1997). In determining the parties' intent, courts consider: (1) whether there has been an express reservation of right not to be bound in the absence of a signed writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing. No one factor is decisive. Id. at 323.

---

[13] Manchester appears to allege promissory estoppel as the basis for enforcing the draft settlement agreement. See SAC ¶¶ 69, 133. Promissory estoppel, however, is applied "only in rare and special cases . . . 'where the circumstances are such as to render it unconscionable to deny the promise upon which the [party] has relied.'" Sears, Roebuck, 932 F. Supp. at 406 (quoting Philo Smith & Co. v. USLIFE Corp., 554 F.2d 34, 36 (2d Cir. 1977)). The Complaint fails to plead such circumstances. See id. at 406-408. In any event, reasonable reliance is an essential element of the claim and not present here in light of the non-binding language in the letter.

In Ciaramella, defendants sought to enforce an unexecuted draft settlement agreement after the plaintiff's attorney reviewed and made revisions to the draft and allegedly stated "we have a deal." Id. at 321. The Court held that the draft settlement agreement was unenforceable because of the "numerous indications" in the proposed settlement agreement that the parties did not intend to bind themselves until the settlement had been signed. Id. at 324. In denying enforcement, the Court noted that there was no evidence of partial performance, that terms remained to be negotiated, and that settlement agreements are generally required to be in writing. Id. at 325-26.

Here, the parties clearly intended not to be bound without a signed writing. First, Ray Lyle signed a non-binding term sheet concerning a possible settlement with Manchester. The term sheet provides:

> [T]his is a **nonbinding** expression of the intention of the parties with respect to the proposed settlement. The parties intend to enter a binding definitive settlement agreement reflecting the terms in this letter and additional terms.

Exhibit C at 2 (emphasis added). The draft settlement agreement further provides that the "signatory" has authority to bind the parties, the provisions will be in full force and effect after the "execution" of the Agreement and that everything the parties receive for "signing" the agreement is described in the agreement. Exhibit C, Draft Settlement Agreement, ¶¶ 10, 15, 16. Thus, the parties explicitly expressed their intention not to be bound without a signed settlement agreement. Moreover, Manchester fails to allege either party partially performed the agreement or that all the terms had been negotiated. For these reasons, Manchester fails to state claim under common law contract principles to enforce a settlement agreement. See Ciaramella, 131 F.3d at 322-26.

**CONCLUSION**

For the reasons stated herein, defendants respectfully requests that the Court dismiss the securities claims in the Second Amended Complaint and decline to exercise supplemental jurisdiction over the remaining claims or in the alternative dismiss counts 1, 2, 3, 4, 5, 6, 9, 10, 11 and 12 and grant such other relief as is just or proper.

Dated: New York, New York
      January 18, 2007

CARTER LEDYARD & MILBURN LLP

By: _____
      Judith A. Lockhart
      Gerald W. Griffin
      Emily Miligan
      Two Wall Street
      New York, New York 10005
      (212) 732-3200